# IN THE SUPREME COURT OF TEXAS

No. 14-0721

USAA TEXAS LLOYDS COMPANY, PETITIONER,

v.

GAIL MENCHACA, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

Argued October 11, 2016

JUSTICE BOYD announced the Court's judgment and delivered the Court's opinion as to Parts I, II, and III.A, in which CHIEF JUSTICE HECHT, JUSTICE GREEN, JUSTICE GUZMAN, JUSTICE LEHRMANN, JUSTICE DEVINE, and JUSTICE BROWN joined, a plurality opinion as to Parts III.B and III.C, in which CHIEF JUSTICE HECHT, JUSTICE LEHRMANN, and JUSTICE DEVINE joined, and an opinion as to Parts III.D, III.E, III.F, and III.G, in which JUSTICE LEHRMANN and JUSTICE DEVINE joined.

CHIEF JUSTICE HECHT filed a concurring opinion.

JUSTICE BLACKLOCK concurs in the judgment without opinion.

JUSTICE GREEN filed a dissenting opinion in which JUSTICE GUZMAN and JUSTICE BROWN joined as to Parts I, II, and IV, and a plurality opinion as to Part III, in which CHIEF JUSTICE HECHT, JUSTICE GUZMAN, and JUSTICE BROWN joined.

JUSTICE JOHNSON did not participate in the decision.

Having granted Petitioner's motion for rehearing, we withdraw the judgment and opinion we issued on April 7, 2017. We unanimously reaffirm the legal principles and rules announced in that opinion, but we disagree on the procedural effect of those principles in this case. Because a

majority of the Court agrees to reverse the court of appeals' judgment and remand the case to the trial court for a new trial, our disposition remains the same.

In our first opinion, we sought to fulfill our duty to eliminate confusion regarding the Court's previous decisions addressing insureds' claims against their insurance companies. As presented in this case, the primary issue is whether the insured can recover policy benefits based on the insurer's violation of the Texas Insurance Code even though the jury failed to find that the insurer failed to comply with its obligations under the policy. We sought to clarify the Court's previous decisions by announcing five rules addressing the relationship between contract claims under an insurance policy and tort claims under the Insurance Code. We unanimously reaffirm those rules today and provide additional guidance in response to the parties' arguments on rehearing. We also concluded in our first opinion that the trial court erred in this case by disregarding the jury's answer to Question 1, in which the jury failed to find that the insurer failed to comply with its obligations under the policy. We unanimously reaffirm that holding as well.

In light of the parties' understandable confusion regarding the Court's previous decisions, we decided in our first opinion to remand the case for a new trial in the interest of justice without addressing the procedural effect of our holdings in this case. We address those issues today, but we reach three different conclusions. JUSTICE GREEN, JUSTICE GUZMAN, and JUSTICE BROWN conclude that the jury's answer to Question 1 is dispositive as to the plaintiff's ability to recover damages for the Insurance Code violation the jury found in answer to Question 2, so they would render judgment for the insurer. *See post* at ___ (GREEN, J., dissenting). THE CHIEF JUSTICE, JUSTICE LEHRMANN, JUSTICE BOYD, and JUSTICE DEVINE conclude that the jury's answer to

2

Question 1 creates a fatal conflict with its answers to Questions 2 and 3. THE CHIEF JUSTICE concludes that we must remand the case for a new trial because we cannot resolve that conflict on appeal. *See post* at ___ (HECHT, C.J., concurring). JUSTICE LEHRMANN, JUSTICE BOYD, and JUSTICE DEVINE conclude that, because the conflicting answers do not present a fundamental error, the insurer waived the conflict by failing to raise it before the trial court discharged the jury. *See* TEX. R. CIV. P. 295. Nevertheless, because the parties lacked the benefit of the clarity we provide today, they conclude that we should remand the case for a new trial in the interest of justice. JUSTICE BLACKLOCK agrees with that disposition, although he does not join any opinion. With five votes (JUSTICE JOHNSON not participating), the Court remands the case for a new trial.

## I.
## Background

After Hurricane Ike struck Galveston Island in September 2008, Gail Menchaca contacted her homeowner's insurance company, USAA Texas Lloyds, and reported that the storm had damaged her home. The adjuster USAA sent to investigate Menchaca's claim found only minimal damage. Based on the adjuster's findings, USAA determined that its policy covered some of the damage but declined to pay Menchaca any benefits because the total estimated repair costs did not exceed the policy's deductible.[1] About five months later, at Menchaca's request, USAA sent another adjuster to re-inspect the property. This adjuster generally confirmed the first adjuster's findings, and USAA again refused to pay any policy benefits. Menchaca sued USAA for breach

---

[1] The policy's declaration page provides that the policy covers "only that part of the loss over the deductible stated," and then lists the deductible amounts for "wind and hail" and for "all other perils."

of the insurance policy and for unfair settlement practices in violation of the Texas Insurance Code.[2] As damages for both claims, she sought only insurance benefits under the policy, plus court costs and attorney's fees.[3]

The parties tried the case to a jury. Question 1 of the jury charge, which addressed Menchaca's breach-of-contract claim, asked whether USAA failed "to comply with the terms of the insurance policy with respect to the claim for damages filed by Gail Menchaca resulting from Hurricane Ike." The jury answered "No." Question 2, which addressed Menchaca's statutory claims, asked whether USAA engaged in various unfair or deceptive practices, including whether USAA refused "to pay a claim without conducting a reasonable investigation with respect to" that claim. As to that specific practice, the jury answered "Yes."[4] Question 3 asked the jury to determine the amount of Menchaca's damages that resulted from either USAA's failure to comply with the policy or its statutory violations, calculated as "the difference, if any, between the amount

---

[2] Menchaca initially alleged a fraud claim, but it was not submitted to the jury. She also sued the first adjuster who inspected her property but later nonsuited those claims. Although the policy provided for an appraisal process to resolve disputes over the amount of covered losses, it appears that neither party ever invoked that alternative method for resolving this dispute. *See* — S.W.3d at — n.9.

[3] As damages for USAA's alleged breach of the insurance contract, Menchaca sought the "benefit of her bargain" under the policy, "which is the amount of her claim [for policy benefits], together with attorney fees." As damages for USAA's alleged statutory violations, she sought "actual damages, which include the loss of the benefits that should have been paid pursuant to the policy, mental anguish, court costs[,] and attorney's fees." She later disclaimed any mental anguish or consequential damages.

[4] Question 2 also separately asked whether USAA engaged in an unfair or deceptive act or practice by: "Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the liability under the insurance policy issued to Gail Menchaca had become reasonably clear;" "Failing to promptly provide to Gail Menchaca a reasonable explanation of the factual and legal basis in the policy for the denial of a claim(s);" "Failing to affirm or deny coverage within a reasonable time;" or "Misrepresenting to Gail Menchaca a material fact or policy provision relating to the coverage at issue." As to each of these specific practices, the jury answered "No."

4

USAA should have paid Gail Menchaca for her Hurricane Ike damages and the amount that was actually paid."[5] The jury answered "$11,350."[6]

Both parties moved for judgment in their favor based on the jury's verdict. USAA argued that because the jury failed to find in answer to Question 1 that USAA failed to comply with the policy, Menchaca could not recover for "bad faith or extra-contractual liability as a matter of law." Menchaca argued that the court should enter judgment in her favor based on the jury's answers to Questions 2 and 3, neither of which required a "Yes" answer to Question 1. The trial court disregarded Question 1 and entered final judgment in Menchaca's favor based on the jury's answers to Questions 2 and 3. The court of appeals affirmed, — S.W.3d —,[7] and we granted USAA's petition for review.

## II.
### Recovering Policy Benefits for Statutory Violations

The parties agree that the damages the jury found in response to Question 3 represent the amount of insurance policy benefits the jury concluded USAA "should have paid" to Menchaca.

---

[5] Specifically, Question 3 asked: "What sum of money . . . would fairly and reasonably compensate Gail Menchaca for her damages, if any, that resulted from the failure to comply you found in response to Question number 1 and/or that were caused by an unfair or deceptive act that you found in response to Question number 2"? The question thus required the jury to determine damages resulting from either a contract breach or a statutory violation or both. The charge instructed the jury to answer Question 3 only if it "answered 'Yes' to Question No. 1 *or* any part of Question No. 2 *or* both questions." The charge then instructed the jury that the "sum of money to be awarded is the difference, if any, between the amount USAA should have paid Gail Menchaca for her Hurricane Ike damages and the amount that was actually paid."

[6] The jury also found that Menchaca's reasonable and necessary attorney's fees "for representation in the trial court" totaled $130,000, and did not find that Menchaca failed to mitigate her damages or that USAA "knowingly" violated the Insurance Code.

[7] The court of appeals modified the judgment to delete an award of penalty interest and affirmed as modified. — S.W.3d —. Menchaca does not complain here about that aspect of the court's judgment.

USAA contends that Menchaca cannot recover any amount of policy benefits because the jury failed to find that USAA breached its obligations under the policy. Although the jury did find that USAA violated the Insurance Code, USAA contends that Menchaca cannot recover policy benefits based on that finding alone.[8] USAA primarily relies on *Provident American Insurance Co. v. Castañeda*, in which we stated that an insurance company's "failure to properly investigate a claim is not a basis for obtaining policy benefits." 988 S.W.2d 189, 198 (Tex. 1998). Menchaca argues that the jury's findings that USAA violated the Code and that the violation resulted in Menchaca's loss of policy benefits USAA "should have paid" sufficiently support the award of policy benefits. Menchaca primarily relies on *Vail v. Texas Farm Bureau Mutual Insurance Co.*, in which we stated

---

[8] Menchaca argues that USAA waived this argument because it (1) did not object that Question 2 was not predicated on a "yes" answer to Question 1; (2) did not request an instruction that the jury should answer "no" to Question 2 if they answered "no" to Question 1; (3) did not object to Question 2 on the ground that it imposed liability without a finding that Menchaca was entitled to benefits under the policy; and, (4) did not object to Question 3 on the ground that it permitted a recovery of policy benefits without a finding that Menchaca was entitled to benefits under the policy. USAA did object to Question 3, however, on the ground that the question impermissibly combined "contractual damages from Question 1 and statutory damages from Question 2, [because] Texas courts have held that extra[-]contractual damages need to be independent from policy damages." USAA complained that submitting just one damages question for all damages arising either under the policy or under the statute or both would make it "unclear potentially if we get 'yes' answers to [Questions] 1 and 2 what the damages are based on." We conclude that USAA's objections were sufficient to make clear its position that contractual damages are independent from statutory damages and must be based on a finding that USAA breached the policy. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (holding that an objection should make "the trial court aware of the complaint, timely and plainly"). We also conclude that USAA's argument raises a purely legal issue that does not affect the jury's role as fact-finder, and that USAA thus preserved the argument by asserting it as a ground for its motion for judgment based on the jury's verdict. *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 450 (Tex. 2004) (holding that when "the issue presented a pure legal question which did not affect the jury's role as fact finder, the post-verdict motion [can be] sufficient to preserve error"); *see also Felton v. Lovett*, 388 S.W.3d 656, 660 n.9 (Tex. 2012) (citing *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 802 (Tex. 2010); *Hoffmann–La Roche*, 144 S.W.3d at 450; *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999)) (holding that "a purely legal issue which does not affect the jury's role as fact-finder" may preserve error when "raised for the first time post-verdict"). Because USAA raises a purely legal argument that the jury's failure to find a contractual breach precludes Menchaca from recovering policy benefits as a matter of law, USAA preserved error by raising the argument in its motion for judgment.

that an insurer's "unfair refusal to pay the insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." 754 S.W.2d 129, 136 (Tex. 1988).

Courts and commentators have expressed confusion over our decisions in this area, and over our statements in *Castañeda* and *Vail* in particular.[9] The Fifth Circuit, for example, concluded that *Castañeda* and other "decisions from the Supreme Court of Texas and Texas's intermediate appellate courts arguably cast doubt on *Vail*'s continued vitality." *In re Deepwater Horizon*, 807 F.3d 689, 698 (5th Cir. 2015). In the *Deepwater Horizon* panel's view, the Fifth Circuit had previously interpreted *Castañeda* as setting out "the opposite rule from that in *Vail*." *Id.* (citing *Great Am. Ins. Co. v. AFS/IBEX Fin. Servs. Inc.*, 612 F.3d 800, 808 & n.1 (5th Cir. 2010)).[10] Today's case presents an opportunity to provide clarity regarding the relationship between claims for an insurance-policy breach and Insurance Code violations. In light of the confusing nature of our precedent in this area, we begin by returning to the underlying governing principles. *See, e.g.*, *U.S. v. New Mexico*, 455 U.S. 720, 733 (1982) (concluding that "the confusing nature of our precedents counsels a return to the underlying constitutional principle").

---

[9] *See, e.g.*, Richard G. Wilson, *Policy Benefits—Are They Recoverable Under Extra-Contractual Theories When a Covered Claim is Denied?*, 12 J. TEX. INS. L. 17, 23 (2014) ("In some circumstances, it appears that courts have simply failed to follow the Texas Supreme Court precedent that is *Vail*."); Robert M. Hoffman & Jaclyn M. O'Sullivan, *What the Insurance Code Giveth, the Courts Cannot Taketh Away: Judicial Confusion Over Whether Insurance Proceeds Can be Trebled*, 11 J. TEX. INS. L. 23, 24 (2011) ("Unfortunately, it is easy to confuse the independent injury issue due to a line of cases that misapplied the 1998 Texas Supreme Court decision in . . . *Castañeda*.").

[10] In *Deepwater Horizon*, the Fifth Circuit certified to us the question of whether, "to maintain a cause of action under Chapter 541 of the Texas Insurance Code against an insurer that wrongfully withheld policy benefits, an insured must allege and prove an injury independent from the denied policy benefits?" 807 F.3d at 701. We accepted the certified question but later dismissed the cause as moot because the parties settled. *See id.*, *certified question accepted* (Dec. 4, 2015) *and dism'd as moot* (Apr. 8, 2016).

The first of these principles is that an "insurance policy is a contract" that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015); *see also Tex. Ass'n of Ctys. Cty. Gov't Risk Mgmt. Pool v. Matagorda Cty.*, 52 S.W.3d 128, 131 (Tex. 2000) (noting that an "insurance policy . . . defines the parties' rights and obligations"). Generally, we construe a policy using the same rules that govern the construction of any other contract. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) (citing *Forbau v. Aetna Life Ins., Co.*, 876 S.W.2d 132, 133 (Tex. 1994)). An insurance policy, however, is a unique type of contract because an insurer generally "has exclusive control over the evaluation, processing[,] and denial of claims," and it can easily use that control to take advantage of its insured. *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987). Because of this inherent "unequal bargaining power," we concluded in *Arnold* that the "special relationship" between an insurer and insured justifies the imposition of a common-law duty on insurers to "deal fairly and in good faith with their insureds." *Id.*

Similar to that common-law duty, the Insurance Code supplements the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits. *See, e.g.*, TEX. INS. CODE § 541.060(a) (prohibiting insurers from engaging in a variety of "unfair settlement practices"). The Code grants insureds a private action against insurers that engage in certain discriminatory, unfair, deceptive, or bad-faith practices, and it permits insureds to recover "actual damages . . . caused by" those practices, court costs, and attorney's fees, plus treble damages if the insurer "knowingly"

8

commits the prohibited act. *Id.* §§ 541.151, .152; *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 441 (Tex. 2012).[11]

"Actual damages" under the Insurance Code "are those damages recoverable at common law," *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 435 (Tex. 1995) (citing *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 939 (Tex. 1980)), which include "benefit-of-the-bargain" damages representing "the difference between the value as represented and the value received," *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 817 (Tex. 1997) (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 373 (Tex. 1984)). But the Code does not create insurance coverage or a right to payment of benefits that does not otherwise exist under the policy. *See Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 600 (Tex. 1993) (discussing the necessity of distinguishing bad-faith issues from "the contract issue of coverage").

An insured's claim for breach of an insurance contract is "distinct" and "independent" from claims that the insurer violated its extra-contractual common-law and statutory duties. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) ("Insurance coverage claims and bad faith claims are by their nature independent."); *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex. 1995) (noting that a bad-faith claim is "distinct" from a suit for breach of the policy); *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) ("[A] policy claim is independent of a bad faith claim."). A claim for breach of the policy is a "contract cause of action," while a

---

[11] Similarly, a claim for bad-faith conduct that breaches the common-law duty "can potentially result in three types of damages: (1) benefit of the bargain damages for an accompanying breach of contract claim, (2) compensatory damages for the tort of bad faith, and (3) punitive damages for intentional, malicious, fraudulent, or grossly negligent conduct." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994), *abrogated on other grounds by U-Haul Int'l v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012).

common-law or statutory bad-faith claim "is a cause of action that sounds in tort." *Twin City*, 904 S.W.2d at 666; *see also Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990) ("[A] breach of the duty of good faith and fair dealing will give rise to a cause of action in tort that is separate from any cause of action for breach of the underlying insurance contract."). But the claims are often "largely interwoven," and the same evidence is often "admissible on both claims." *Akin*, 927 S.W.2d at 630.

The primary question in this case is whether an insured can recover policy benefits as "actual damages" caused by an insurer's statutory violation absent a finding that the insured had a contractual right to the benefits under the insurance policy. Generally, the answer to this question is "no," but the issue is complicated and involves several related questions. In an effort to clarify these issues, we distill from our decisions five distinct but interrelated rules that govern the relationship between contractual and extra-contractual claims in the insurance context. First, as a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not provide the insured a right to receive those benefits. Second, an insured who establishes a right to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation causes the loss of the benefits. Third, even if the insured cannot establish a present contractual right to policy benefits, the insured can recover benefits as actual damages under the Insurance Code if the insurer's statutory violation caused the insured to lose that contractual right. Fourth, if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits.

10

And fifth, an insured cannot recover *any* damages based on an insurer's statutory violation if the insured had no right to receive benefits under the policy and sustained no injury independent of a right to benefits.

### A. The General Rule

The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy. This rule derives from the fact that the Insurance Code only allows an insured to recover actual damages "caused by" the insurer's statutory violation. *See* TEX. INS. CODE § 541.151; *Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 780 (Tex. 2006). We first announced this rule in *Stoker*, 903 S.W.2d at 341. The insurer in *Stoker* relied on an invalid reason to deny the insureds' claim for benefits but later asserted a valid basis for denying the claim. *See id.* at 339. The insureds sued the insurer for breach of contract and for bad-faith denial of the claim, seeking only policy benefits as damages. *Id.* at 339–40. The trial court granted summary judgment for the insurer on the breach-of-contract claim because the policy did not cover the claim. *Id.* at 339. The jury, however, found the insurer liable on the extra-contractual claims, and based on that finding, the trial court awarded policy benefits as "extra-contractual damages." *Id.* at 339–40. The court of appeals affirmed, but we reversed and rendered judgment for the insurer. We explained that as "a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Id.* at 341.[12]

---

[12] We cited the following non-Texas authorities in support of this general rule:

*O'Malley v. United States Fidelity & Guar. Co.*, 776 F.2d 494, 500 (5th Cir. 1985) (noting that no Mississippi case has ever allowed bad faith recovery for the insured without first establishing liability under the policy); *Gilbert v. Cong. Life Ins. Co.*, 646 So. 2d 592, 593 (Ala. 1994) (plaintiff bears the burden of proving a breach of contract by the defendant); *Reuter v. State Farm Mut. Auto.*

11

Some courts have read *Stoker* to hold that no claim for *any kind of* bad-faith conduct can exist if the policy does not cover the insured's loss. But *Stoker* involved only a claim for bad-faith denial of the insureds' claim for benefits. We clarified this point the following year in *Akin*: "While *Stoker* held that a judgment for the insurer on the coverage claim prohibits recovery premised only on bad faith *denial of a claim*, it does not necessarily bar *all claims for bad faith*." 927 S.W.2d at 631 (citing *Stoker*, 903 S.W.2d at 342) (emphases added). Thus, a more accurate statement of the rule we announced in *Stoker* is that "there can be no claim for bad faith [denial of an insured's claim for policy benefits] when an insurer has promptly denied a claim that is in fact not covered." *Stoker*, 903 S.W.2d at 341.

Although *Stoker* involved only a bad-faith-denial claim, we have since applied its general rule to other types of extra-contractual violations. In doing so, we have confirmed that the rule is based on the principle that an insured who sues an insurer for statutory violations can only recover damages "caused by" those violations. In *Progressive County Mutual Insurance Co. v. Boyd*, for example, the insured alleged that the insurer breached the policy and violated the Code and its

---

*Ins. Co., Inc.*, 469 N.W.2d 250, 253 (Iowa 1991) ("[A] bad faith failure to pay the insured when the insured event occurs . . . may subject the insurer to tort liability"); *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993) (noting that in order to establish a tort action for bad faith the insured must first prove that the insurer was obligated to pay under the policy); *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993) ("An insurer fails to act in good faith when it refuses 'without proper cause' to compensate the insured for a loss covered by the policy."); *Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997, 1000 (R.I. 1988) ("[T]here can be no cause of action for an insurer's bad faith refusal to pay a claim until the insured first establishes that the insurer breached its duty under the contract of insurance."); *see also* OSTRAGER & NEWMAN, INSURANCE COVERAGE DISPUTES § 12.01 at 503 (7th ed. 1994) ("The determination of whether an insurer acted in bad faith generally requires as a predicate a determination that coverage exists for the loss in question."); 15A RHODES, COUCH ON INSURANCE LAW 2D § 58:1 at 249 (Rev. ed. 1983) ("As a general rule, there may be no extra-contractual recovery where the insured is not entitled to benefits under the contract of insurance which establishes the duties sought to be sued upon.").

*Stoker*, 903 S.W.2d at 341.

common-law duty by failing to promptly pay his claim, failing to fairly investigate the claim, and denying the claim in bad faith. 177 S.W.3d 919, 920, 922 (Tex. 2005) (per curiam). Because these extra-contractual claims were "predicated on [the] insurance policy and the accident being covered under the insurance policy," we held that the trial court's take-nothing judgment on the contract claim "negate[d]" the extra-contractual claims. *Id.* at 920–21. Specifically addressing the statutory prompt-payment claim, we explained that there "can be no liability [under the Code] if the insurance claim is not covered by the policy." *Id.* at 922. Similarly, in *Chrysler Insurance Co. v. Greenspoint Dodge of Houston, Inc.*, we quoted *Stoker*'s general rule and held that, because the insurer "did not breach the insurance contract, no basis supports" the insured's recovery of "punitive and extra-contractual damages." 297 S.W.3d 248, 253–54 (Tex. 2009) (per curiam). And in *State Farm Lloyds v. Page*, we said, "When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive," and there is "no liability under [the Insurance Code] if there is no coverage under the policy." 315 S.W.3d 525, 532 (Tex. 2010) (citing *Boyd*, 177 S.W.3d at 921). Most recently, in *JAW the Pointe, L.L.C. v. Lexington Insurance Co.*, we relied on *Stoker* for the proposition that when an insurance policy does not cover the insured's claim for benefits, "the insured cannot recover for the insurer's bad faith failure to effectuate a prompt and fair settlement of the claim." 460 S.W.3d 597, 599, 602 (Tex. 2015).

In the present case, the jury found that USAA violated the Code by denying the claim without conducting a reasonable investigation. *See* TEX. INS. CODE § 541.060(a)(7) (providing that an insurer that "refus[es] to pay a claim without conducting a reasonable investigation with respect to the claim" commits an unfair settlement practice). In our early decisions, we mentioned this

13

type of statutory violation but did not specifically address whether the general rule applies to such a claim. In *Stoker*, we expressly stated that the general rule should not "be understood as retreating from the established principles regarding the duty of an insurer to timely investigate its insureds' claims." 903 S.W.2d at 341. But we did not cite any authority for those "established principles." Instead, we merely noted, "These circumstances are not present in this case." *Id.*[13] That same year, we noted in *Twin City* that "some acts of bad faith, such as a *failure to properly investigate a claim* or an unjustifiable delay in processing a claim, do not *necessarily* relate to the insurer's breach of its contractual duties to pay covered claims, and may give rise to different damages." 904 S.W.2d at 666 n.3 (emphases added). The following year, we noted in *Akin* that the insured alleged that the insurer violated its statutory duties by failing to "properly investigate" the claim, 927 S.W.2d at 629, and we explained that the general rule "does not necessarily bar all claims for bad faith," *id.* at 631 (citing *Stoker*, 903 S.W.2d at 342), but we did not specifically address whether the general rule applies to an improper-investigation claim.

We did address something akin to an improper-investigation claim, however, in *Castañeda*. The insured in that case sued her insurer alleging statutory violations "arising out of the denial of her claim for benefits under a health insurance policy and the manner in which her claim was handled." 988 S.W.2d at 191. But she did not assert a claim for breach of contract or seek a finding that the policy covered her claim. *Id.* at 196, 201. Instead, she argued that she was entitled to

---

[13] At least one court of appeals has held that in *Stoker* we recognized an inadequate-investigation violation as an "exception" to the general rule. *See Toonen v. United Servs. Auto Ass'n*, 935 S.W.2d 937, 941–42 (Tex. App.—San Antonio 1996, no writ) (citing *Stoker*, 903 S.W.2d at 341). That holding misconstrues *Stoker*, as our subsequent decisions demonstrate.

14

recover damages "*equivalent* to policy benefits" based on the jury's finding that the insurer violated the statute by failing to acknowledge communications about the claim and by failing "to adopt reasonable standards for investigating claims." *Id.* at 198 (emphasis added). We found no evidence that the insurer violated the statute in either manner. *Id.* at 192. We also explained that, even if there had been evidence of a violation, a "failure to properly investigate a claim is not a basis for obtaining policy benefits." *Id.* at 198 (citing *Stoker*, 903 S.W.2d at 341). We ultimately rendered judgment for the insurer because "no support in the evidence for any of the extra-contractual claims" existed and because the insured "did not plead and did not obtain a determination [that the insurer] was liable for breach of the insurance contract." *Id.* at 201. We held similarly in *Boyd*, 177 S.W.3d at 922. Because the claim there was predicated on the accident being covered under the insurance policy, when the trial court granted a take-nothing judgment on the insured's breach-of-contract claim, the insured's failure-to-fairly-investigate claim failed as well. *Id.* at 920–21; *see also In re Allstate Cty. Mut. Ins. Co.*, 447 S.W.3d 497, 501 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) (citing *Boyd* for the proposition that an "insurer generally cannot be liable for failing to settle or investigate a claim that it has no contractual duty to pay").

Here, Menchaca contends that she can recover policy benefits as damages resulting from USAA's statutory violation because that claim is independent from her claim for policy breach. The court of appeals agreed, reasoning that the statute "imposes a duty on an insurer, above and beyond the duties established by the insurance policy itself, to conduct a reasonable investigation prior to denying a claim," and thus "USAA could have fully complied with the contract even if it

15

failed to reasonably investigate Menchaca's claim." — S.W.3d —. While we agree with the court's premise that USAA could have complied with the policy even if it failed to reasonably investigate the claim, we reject its conclusion just as we expressly rejected it in *Stoker*. Although we accepted the argument's premise that "a policy claim is independent of a bad faith claim," we found that the "asserted conclusion . . . does not necessarily follow," at least when the claim seeks benefits "not covered by the policy." *Stoker*, 903 S.W.2d at 340–41.

The reason we reject Menchaca's independent-claims argument—indeed, the very reason for the general rule—derives from the fact that the Insurance Code only allows an insured to recover actual damages "caused by" the insurer's statutory violation. TEX. INS. CODE § 541.151. "Actual damages" are the common-law damages the insured sustains "as a result of" the statutory violation. *Kish v. Van Note*, 692 S.W.2d 463, 466 (Tex. 1985) (citing *Smith v. Baldwin*, 611 S.W.2d 611, 617 (Tex. 1980)). If the insurer violates a statutory provision, that violation—at least generally[14]—cannot cause damages in the form of policy benefits that the insured has no right to receive under the policy. We acknowledged this reasoning in *Castañeda*, noting that the "concurring Justices in *Stoker* agreed that the manner in which a claim is investigated must be the proximate cause of damages before there could be a recovery." 988 S.W.2d at 198 (citing *Stoker*, 903 S.W.2d at 345 (Spector, J., concurring)).[15] We held that, in the absence of a finding that the

---

[14] We say "generally" here because in some cases the insurer's statutory violation may cause the policy to not cover the claim when, but for the statutory violation, the policy would cover the claim. *See, e.g.*, *JAW the Pointe*, 460 S.W.3d at 602. We discuss this situation further below.

[15] Justice Spector authored the concurrence in *Stoker*, joining the Court's judgment because she agreed that no evidence supported the claim that the insurer's "bad faith caused damages to the Stokers." *Stoker*, 903 S.W.2d at 342 (Spector, J., concurring). Notably, Justice Spector joined Justice Gonzalez's dissent in *Castañeda* in which Justice

16

insurer had breached the policy, the insured could not recover any damages because none of the insurer's alleged statutory violations "was the producing cause of any damage separate and apart from those that would have resulted from a wrongful denial of the claim." *Id.* Because the insured only sought damages that "flow[ed]" and "stemmed from the denial of benefits," *id.* at 198, 199, she could not recover anything because she "did not plead and did not obtain a determination [that the insurer] was liable for breach of the insurance contract." *Id.* at 201.[16]

Relying on these decisions, USAA contends that the general rule applies here and Menchaca cannot recover policy benefits based on a statutory violation because the jury failed to find that USAA "breached" the insurance contract. In response, Menchaca argues that she can avoid the general rule by obtaining a finding that the policy "covers" her losses, and she did not have to obtain a finding that USAA "breached" the policy to recover under the statute. Our precedent is confusing on this point because we have actually used both phrases to describe the general rule. *See, e.g.*, *JAW the Pointe*, 460 S.W.3d at 599 (holding that insured could not recover benefits as statutory damages because "the policy *did not cover* the insured's losses") (emphasis added); *Page*, 315 S.W.3d at 532 ("There can be no liability under [the Insurance Code] if there is *no coverage* under the policy.") (emphasis added); *Chrysler*, 297 S.W.3d at 254 (holding that

---

Gonzalez argued that *Stoker* does not apply when the policy covers the claim. *See Castañeda*, 988 S.W.2d at 203, 208 (Gonzalez, J., dissenting).

[16] Although we did not explain the reason for the general rule in *Stoker*, we alluded to it by acknowledging "the possibility that in denying the claim, the insurer may commit some act, so extreme, that would *cause* injury independent of the policy claim." *Stoker*, 903 S.W.2d at 341 (emphasis added). We made similar allusions to the causation requirement in *Boyd*, 177 S.W.3d at 920–21 (holding that insured could not recover benefits based on the insurer's improper investigation when the policy did not cover the claim for benefits because the improper-investigation claim was "predicated" on policy coverage), and in *Twin City*, 904 S.W.2d at 667 n.3 (noting that some bad-faith acts may "give rise" to damages other than policy benefits).

insured could not recover extra-contractual damages because the insurer "*did not breach* the insurance contract") (emphasis added); *Boyd*, 177 S.W.3d at 920–21 (concluding that a take-nothing judgment on a breach-of-contract claim negated recovery of benefits as statutory damages); *Castañeda*, 988 S.W.2d at 201 (holding that insured could not recover statutory damages "equivalent to policy benefits" because she did not plead or establish that the insurer "was *liable for breach* of the insurance contract") (emphasis added); *Stoker*, 903 S.W.2d at 341 ("[T]here can be no claim for bad faith when an insurer has promptly denied a claim that is in fact *not covered*.") (emphasis added).

In at least a general sense, no relevant distinction exists between "breach" and "coverage" in this context because no breach can occur unless coverage exists, and a breach necessarily occurs if coverage exists and the insurer fails to pay the amount covered. If the policy does not cover the insured's loss, the insurer does not breach the policy by failing to pay benefits for that loss because the insured is not entitled to those benefits. Conversely, if the policy does cover the loss,[17] the insurer necessarily breaches the policy if it fails to pay benefits for the loss because the insured is entitled to those benefits.

In a more specific sense, however, an important distinction does exist, at least to the extent the term "breach" is used to refer specifically to a breach-of-contract claim. Here, for example,

---

[17] We use the phrase "cover the loss" here to mean that the policy obligates the insurer to pay at least some of the benefits the insured is seeking. In a broad sense, a policy could provide "coverage" for a loss and yet not obligate the insurer to pay any benefits because, for example, the amount of the loss is less than the policy's applicable deductible. In that sense, the loss may be said to fall within the policy's "coverage," but the insured is not entitled to benefits and the insurer does not breach the policy by failing to pay benefits. But here, the policy expressly provides that it covers "only that part of the loss over the deductible stated," so the policy does not "cover" the loss to the extent it falls below the deductible.

18

USAA contends that, even if its policy covered Menchaca's loss, Menchaca could not recover policy benefits unless she prevailed on her breach-of-contract claim under Question 1. According to USAA, in other words, an insured can only recover policy benefits as damages on a breach-of-contract claim and can never recover policy benefits as damages on a statutory-violation claim.

We disagree. Although our prior decisions refer interchangeably to both "breach" and "coverage," our focus in those cases was on whether the insured was entitled to benefits under the policy, because an insurer's statutory violation cannot "cause" the insured to suffer the loss of benefits unless the insured was entitled to those benefits. But if the insured was entitled to the benefits and the insurer's statutory violation caused the insured to lose those benefits, the statute authorizes the insured to recover those benefits as "actual damages . . . caused by" the statutory violation, even if the insured does not submit a separate breach-of-contract claim. TEX. INS. CODE § 541.151. Thus, although we have referred to both "breach" and "coverage," what matters for purposes of causation under the statute is whether the insured was entitled to receive benefits under the policy. While an insured cannot recover policy benefits for a statutory violation unless the jury finds that the insured had a right to the benefits under the policy, the insured does not *also* have to prevail on a separate breach-of-contract claim based on the insurer's failure to pay those benefits. As we explain further in the following sections, if the jury finds that the policy entitles the insured to receive the benefits and that the insurer's statutory violation resulted in the insured not receiving those benefits, the insured can recover the benefits as "actual damages . . . caused by" the statutory violation. *See id.*

19

Nevertheless, an insurer's obligation to pay policy benefits and the insured's right to receive them derive solely from the insurance policy's terms: "If the loss is covered, then the insurer is obligated to pay the claim according to the terms of the insurance contract." *Moriel*, 879 S.W.2d at 17. Because an insurer's statutory violation permits an insured to receive only those "actual damages" that are "caused by" the violation, we clarify and affirm the general rule that an insured cannot recover policy benefits as actual damages for an insurer's statutory violation if the insured has no right to those benefits under the policy.

### B. The Entitled-to-Benefits Rule

The second rule from our precedent is that an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as "actual damages" under the statute if the insurer's statutory violation causes the loss of the benefits. This rule, a logical corollary to the general rule, is what we recognized in *Vail*. The insureds in *Vail* sued their insurer for common-law bad faith and statutory violations (but not for breach of contract), alleging a "bad faith failure to pay the claim" and seeking "the full amount" of policy benefits plus statutory damages. 754 S.W.2d at 130. The jury found that the insurer violated the statute by failing to "attempt[ ] in good faith to effectuate a prompt, fair, and equitable settlement" when "liability had become reasonably clear," and breached its common-law duty of good faith and fair dealing by failing "to exercise good faith in the investigation and processing of the claim." *Id.* at 134. Based on these findings, the trial court awarded benefits in the amount of the "full policy limit" plus treble that amount, attorney's fees, and prejudgment interest. *Id.* at 131.

The insurer argued that the insureds could not recover policy benefits as damages for statutory violations because "the amount due under the policy solely represents damages for breach

20

of contract and does not constitute actual damages in relation to a claim of unfair claims settlement practices." *Id.* at 136. We rejected that argument and held that "an insurer's unfair refusal to pay the insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." *Id.* We explained that the insureds "suffered a *loss* . . . for which they were entitled to make a claim under the insurance policy," and that loss was "transformed into a legal *damage*" when the insurer "wrongfully denied the claim." *Id.* "That damage," we held, "is, at minimum, the amount of policy proceeds wrongfully withheld by" the insurer. *Id.* Because the Insurance Code provides that the statutory remedies are cumulative of other remedies, we concluded that the insureds could elect to recover the benefits under the statute even though they also could have asserted a breach-of-contract claim. *Id.*

USAA contends, and some Texas courts have concluded, that we later rejected the *Vail* rule in *Castañeda* and *Stoker*, and thus an insured can never recover policy benefits as actual damages for statutory or common-law bad-faith violations. *See, e.g.*, *Mai v. Farmers Tex. Cty. Mut. Ins. Co.*, No. 14-07-00958-CV, 2009 WL 1311848, at *6 (Tex. App.—Houston [14th Dist.] May 7, 2009, pet. denied) (mem. op.) ("This position, that expected policy benefits can equate to bad faith damages, has been firmly rejected by the Texas Supreme Court."). The Fifth Circuit reached the same conclusion in *Parkans International, LLC v. Zurich Insurance Co.*, holding that, in light of *Castañeda*, there "can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits." 299 F.3d 514, 519 (5th Cir. 2002). The Fifth Circuit later relied on *Parkans* to reject an insured's argument that "it did not need to

21

prove a separate injury in order to maintain its extra-contractual claims" because the insurer's "denial of insurance proceeds, standing alone, entitled it to recover on its extra-contractual claims." *Great Am. Ins. Co.*, 612 F.3d at 808 n.1.[18]

We did not reject the *Vail* rule in *Stoker* or in *Castañeda*. While we could have made the point more clearly, the distinction between the cases is that the parties in *Vail* did not dispute the insured's entitlement to the policy benefits, and the only issue was whether the insured could recover those benefits as actual damages caused by a statutory violation. *Vail*, 754 S.W.2d at 136. The rule we announced in *Vail* was premised on the fact that the policy undisputedly covered the loss in that case, and the insurer therefore "*wrongfully* denied" a "*valid* claim." *Id.* at 136–37 (emphases added).[19] If an insurer's wrongful denial of a valid claim for benefits results from or constitutes a statutory violation, the resulting damages will necessarily include "at least the amount of the policy benefits wrongfully withheld." *Id.* at 136. We confirmed this reading of *Vail* and

---

[18] At least one federal district court expressly disagreed with *Great American*'s reading of *Castañeda*, but it ultimately concluded that it was compelled to follow the Fifth Circuit's precedent. *See In re Oil Spill by the Oil Rig Deepwater Horizon*, 2014 WL 5524268, at *15 (E.D. La. Oct. 31, 2014) (disagreeing with insurer's argument that the insured could not recover policy benefits as actual damages under the statute because we "considered and rejected" that argument in *Vail*, but nevertheless concluding that it was required to follow *Great American*), *aff'd in part, question certified sub nom*, *Deepwater Horizon*, 807 F.3d at 689.

[19] Although four justices dissented in *Vail* in two separate opinions, none of them objected to the Court's opinion or judgment on the basis that the insureds failed to plead or obtain a finding that the insureds were entitled to receive benefits under the policy. Although the Court's majority opinion did not expressly explain the circumstances, it noted that the insureds "pleaded and proved" the amount of the policy's coverage and "offered evidence that [the insurer] had wrongfully denied the claim, resulting in a failure to pay [the policy benefits] when due." *Vail*, 754 S.W.2d at 137. The majority thus concluded that the insureds sustained the policy limits "as actual damages as a result of [the insurer's] unfair claims settlement practices." *Id.* Justice Gonzalez provided more clarity in his dissent, noting that the insurer "*admits* that it owes [the insured] the full amount of the policy" and thus "the sole issue on appeal is whether [the insured] is entitled to treble damages under the [statute]." *Id.* at 138 n.1 (Gonzalez, J., dissenting) (emphasis added). Apparently, the Court's majority did not insist upon a jury finding of coverage or breach because the insurer admitted that the insured was entitled to the benefits. *Vail* should not be read, however, as suggesting that an insured can recover benefits for a statutory violation when the insured fails to establish and the insurer does not concede that the insured has a contractual right to the benefits.

reaffirmed the general rule in *Twin City*, 904 S.W.2d at 666. There, we explained that "*Vail* was only concerned with the insurer's argument that policy benefits *improperly withheld* were not 'actual damages in relation to a claim of unfair claims settlement practices.'" *Id.* (emphasis added) (quoting *Vail*, 754 S.W.2d at 136). We further explained that the Court rejected the insurer's argument in *Vail* because "policy benefits *wrongfully withheld* were indeed actual damages" under the statute. *Id.* (emphasis added).

By contrast, in *Castañeda*, the insured did not establish and the insurer did not concede that the insured had a right to benefits under the policy. To the contrary, the insured "never sought and did not receive any contractual relief," *Castañeda*, 988 S.W.2d at 196, and never even alleged that the insurer "was liable for breach of the insurance contract," *id.* at 201. Instead, she sought only to recover damages "*equivalent* to policy benefits" based solely on her statutory claims that the insurer failed to acknowledge communications about her claim and failed to "adopt reasonable standards for investigating claims." *Id.* at 198 (emphasis added). We expressly refused to provide any opinion on "whether there was contractual coverage." *Id.* at 196. We first addressed whether any evidence existed that the insurer violated the statute or its common-law duties, and in deciding that issue we concluded that, even *assuming* that there was coverage, the mere existence of coverage would not prove that the insurer violated the statute or its common-law duties by denying the claim. *Id.* at 196–97. We made no such assumption, however, when we later addressed the insured's separate argument regarding "the damages that might be recoverable if an insurer failed to adequately investigate a claim." *Id.* at 198. On that issue, we held that an insurer's "failure to properly investigate a claim is not a basis for obtaining policy benefits," but we did not assume

23

that coverage existed when deciding that separate issue. *Id.* Instead, we relied on the fact that the insured "did not plead and did not obtain a determination [that the insurer] was liable for breach of the insurance contract." *Id.* at 198, 201.

In short, *Stoker* and *Castañeda* stand for the general rule that an insured cannot recover policy benefits as damages for an insurer's extra-contractual violation if the policy does not provide the insured a right to those benefits. *Vail* announced a corollary rule: an insured who establishes a right to benefits under the policy can recover those benefits as actual damages resulting from a statutory violation. We clarify and affirm both of these rules today.

### C. The Benefits-Lost Rule

A third rule that our precedent recognizes is that an insured can recover benefits as actual damages under the Insurance Code even if the insured has no right to those benefits under the policy, *if the insurer's conduct caused the insured to lose that contractual right*. We have recognized this principle in the context of claims alleging that an insurer misrepresented a policy's coverage, waived its right to deny coverage or is estopped from doing so, or committed a violation that caused the insured to lose a contractual right to benefits that it otherwise would have had. In each of these contexts, the insured can recover the benefits even though it has no contractual right to recover them because the benefits are actual damages "caused by" the insurer's statutory violation.

In the first context, we have recognized that an insurer that violates the statute by misrepresenting that its policy provides coverage that it does not in fact provide can be liable under the statute for such benefits if the insured is "adversely affected" or injured by its reliance on the misrepresentation. *See Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 694 (Tex.

24

1979).[20] Although the policy does not give the insured a contractual right to receive the benefits, the insurer's misrepresentation of the policy's coverage constitutes a statutory violation that causes actual damages in the amount of the benefits that the insured reasonably believed she was entitled to receive. *Id.* When, for example, a health insurer's agent represented that a policy "offered full coverage without qualification" for preexisting medical conditions, and the insured reasonably relied on that representation, the insured could recover the full coverage even though the policy actually limited such coverage to a specific maximum amount. *Kennedy v. Sale*, 689 S.W.2d 890, 891–92 (Tex. 1985); *see also Tapatio Springs Builders Inc. v. Md. Cas. Ins. Co.*, 82 F. Supp. 2d 633, 647 (W.D. Tex. 1999) ("A misrepresentation claim is independent, and may exist in the absence of coverage. To allege a misrepresentation claim under the DTPA, a plaintiff must plead a misrepresentation that caused actual damages.") (citing TEX. BUS. & COM. CODE § 17.50(a); *Castañeda*, 988 S.W.2d at 199–200); *In re Allstate Cty. Mut. Ins. Co.*, 447 S.W.3d 497, 502 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding) ("[M]isrepresentation claims . . . are not dependent upon a determination that [the insurer] has a contractual duty to pay . . . benefits to the [insureds], and will not be rendered moot if [the insurer] prevails on the breach of contract claim.") (citing TEX. BUS. & COM. CODE § 17.46(b)(5), (12); TEX. INS. CODE § 541.061(3)–(5)).

The second context in which the benefits-lost rule might apply involves claims based on waiver and estoppel. We have explained that waiver and estoppel cannot be used to re-write a policy so that it provides coverage it did not originally provide. *Ulico*, 262 S.W.3d at 775. But if

---

[20] *Royal Globe*, which was also a DTPA case, preceded the 1979 amendments to the DTPA that changed the causation standard from "adversely affected" to "producing cause." *See Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 835 (Tex. 2009) (explaining effect of the 1979 amendments).

the insurer's statutory violations prejudice the insured, the insurer may be estopped "from denying benefits that would be payable under its policy as if the risk had been covered." *Id.* Under such circumstances, the insured may recover "any damages it sustains because of the insurer's actions," even though the policy does not cover the loss. *Id.* at 787.

Finally, the benefits-lost rule may apply when the insurer's statutory violation actually caused the policy not to cover losses that it otherwise would have covered. *See, e.g., JAW the Pointe*, 460 S.W.3d at 602. The insured in *JAW the Pointe* sought policy benefits to cover its costs to demolish and rebuild an apartment complex that sustained significant damage from Hurricane Ike. *See id.* at 599. The primary insurance policy covered three hundred otherwise unrelated apartment complexes but limited the total coverage to $25 million per occurrence. *Id.* When the insurer denied the insured's claim for some of the losses, the insured filed suit asserting claims for both breach of contract and statutory violations. *Id.* at 601. As the parties continued efforts to resolve their dispute, the insurer continued paying claims filed by the other covered apartment complexes until the insurer reached the policy's $25 million limit. *Id.* The insurer then filed for summary judgment on the insured's contract claim, arguing that it no longer had a contractual duty to cover the losses because it had paid the policy limits. *Id.* at 600. The insured did not oppose the motion and the trial court granted it, leaving only the statutory claims for trial. *Id.* A jury found that the insurer had violated the statute, and based on those violations the trial court awarded the insured both actual damages in the form of the policy benefits and additional statutory damages based on the insurer's "bad faith" statutory violations. *Id.* at 601–02.

The insurer appealed, arguing that the insured could not recover policy benefits or statutory damages because the policy did not cover the insured's losses. *See id.* at 602. But instead of relying on the policy limits to defeat coverage, the insurer argued that the policy never covered the losses even before the insurer paid the limits because a policy exclusion applied and negated any coverage. *See id.* We acknowledged that as "a general rule there can be no claim for bad faith when an insurer has promptly denied a claim that is in fact not covered." *Id.* (quoting *Stoker*, 903 S.W.2d at 341) (internal quotation marks omitted). But we also noted that the insured argued that "the policy covered [the insured's losses] and [the insurer] should have paid those costs before it made other payments that exhausted the policy limits." *Id.* In other words, the insured argued that, although it could no longer prevail on its breach-of-contract claim because the insurer had paid its policy limits, the insurer's statutory violations caused the insured to lose its contractual right to the policy benefits by delaying the payments until after the limits had been reached. We accepted this argument, but ultimately concluded that the insured was never entitled to the policy benefits because the exclusion negated any coverage under the policy. Because the policy "excluded coverage for [the insured's] losses, [the insured] cannot recover against [the insurer] on its statutory bad-faith claims." *Id.* at 610. Put simply, an insurer that commits a statutory violation that eliminates or reduces its contractual obligations cannot then avail itself of the general rule.

### D. The Independent-Injury Rule

The fourth rule from our precedent derives from the fact that an insurer's extra-contractual liability is "distinct" from its liability for benefits under the insurance policy. *See Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 214 (Tex. 1988), *overruled on other grounds by Ruttiger*, 381 S.W.3d at 441. In *Stoker*, after we announced the general rule that "there can be no claim for bad

27

faith when an insurer has promptly denied a claim that is in fact not covered," we explained that we were not excluding "the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim." 903 S.W.2d at 341 (citing *Aranda*, 748 S.W.2d at 214).

There are two aspects to this independent-injury rule. The first is that, if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits. *Id.* We recognized this in *Twin City*, explaining that some extra-contractual claims may not "relate to the insurer's breach of contractual duties to pay covered claims" and may thus "give rise to different damages." 904 S.W.2d at 666 n.3. If such damages result from an independent injury "caused by" the insurer's statutory violation, the insured can recover those damages, just as insureds have always been able to recover "compensatory damages for the tort of bad faith" under the common law. *Moriel*, 879 S.W.2d at 17. Thus, an insured can recover actual damages caused by the insurer's bad-faith conduct if the damages "are separate from and . . . differ from benefits under the contract." *Twin City*, 904 S.W.2d at 666 (identifying mental anguish damages as an example). We reaffirmed this aspect of the independent-injury rule in *Castañeda*, recognizing that "there might be liability for damage to the insured other than policy benefits or damages flowing from the denial of the claim if the insured mishandled a claim." 988 S.W.2d at 198. We concluded that the insured could not recover anything in that case, however, because "none of the [insurer's] actions or inactions . . . was the producing cause of any damage separate and apart from those that would have resulted from a wrongful denial of the claim." *Id.*

28

This aspect of the independent-injury rule applies, however, only if the damages are truly independent of the insured's right to receive policy benefits. It does not apply if the insured's statutory or extra-contractual claims "are predicated on [the loss] being covered under the insurance policy," *Boyd*, 177 S.W.3d at 920, or if the damages "flow" or "stem" from the denial of the claim for policy benefits, *see Castañeda*, 988 S.W.2d at 198–99. When an insured seeks to recover damages that "are predicated on," "flow from," or "stem from" policy benefits, the general rule applies and precludes recovery unless the policy entitles the insured to those benefits. *See Boyd*, 177 S.W.3d at 920–22 (concluding that insured's common-law conversion claim, common-law bad-faith claim, and statutory claims were all "negated" because policy did not cover underlying losses and insured did "not allege that he suffered any damages unrelated to and independent of the policy claim"); *Castañeda*, 988 S.W.2d at 199 (holding that insured could not recover damages for loss of credit reputation because any such loss "stemmed from the denial of benefits" that were not owed under the policy).

The second aspect of the independent-injury rule is that an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits. Thus, we held in *Twin City* that an insured who prevails on a statutory claim cannot recover punitive damages for bad-faith conduct in the absence of independent actual damages arising from that conduct. 904 S.W.2d at 666; *see also Powell Elec. Sys., Inc. v. Nat'l Union Fire Ins. Co.*, 2011 WL 3813278, at *9 (S.D. Tex. Aug. 29, 2011) (granting summary judgment for the insured on its breach-of-contract claim but for the

insurer on common-law and statutory bad-faith claims because the insured "failed to allege damage independent of the damages arising from the underlying breach of the insurance contract").

Our reference in *Stoker* to "the possibility" that a statutory violation could cause an independent injury suggested that a successful independent-injury claim would be rare, and we in fact have yet to encounter one. *See, e.g.*, *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521–22 (5th Cir. 2013) ("The *Stoker* language has frequently been discussed, but in seventeen years since the decision appeared, no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim . . . ."). This is likely because the Insurance Code offers procedural protections against misconduct likely to lead to an improper denial of benefits and little else. *See, e.g.*, TEX. INS. CODE § 541.060 (prohibiting an insurer from "requiring a claimant as a condition of settling a claim to produce the claimant's federal income tax returns"). We have further limited the natural range of injury by insisting that an injury is not "independent" from the insured's right to receive policy benefits if the injury "flows" or "stems" from the denial of that right. *See Castañeda*, 988 S.W.2d at 199. Today, although we reiterate our statement in *Stoker* that such a claim could exist, we have no occasion to speculate what would constitute a recoverable independent injury.

### E. The No-Recovery Rule

The fifth and final rule is simply the natural corollary to the first four rules: An insured cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits. *Castañeda*, 988 S.W.2d at 198; *see also Lundstrom v. United Servs. Auto. Ass'n–CIC*, 192 S.W.3d 78, 96 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (rendering judgment for insurer

30

because policy did not cover claim and insureds "have not alleged any act so extreme as to cause an injury independent of [the insurer's] denial of their policy claim"); *Bailey v. Progressive Cty. Mut. Ins. Co.*, No. 05-01-00822-CV, 2004 WL 1193917, at *1 (Tex. App.—Dallas June 1, 2004, no pet.) (mem. op., not designated for publication) (rendering judgment against insureds because policy did not cover claim and insureds demonstrated no "independent injury arising from" statutory violations); *see also Alaniz v. Sirius Int'l Ins. Corp.*, 626 F. App'x 73, 79 (5th Cir. 2015) (per curiam) (citing *Boyd*, 177 S.W.3d at 922) (affirming summary judgment for insurer on all claims because no coverage or breach and insured put forth no evidence of "extreme conduct or of damages suffered independent of those that would have resulted from an alleged wrongful denial of his claim").

**F. Submitting Claims for Policy Benefits**

In its motion for rehearing in this case, USAA urges us to provide additional guidance on how parties should submit claims for policy benefits to a jury, particularly when the insured asserts both a breach-of-contract claim and a statutory-violation claim and seeks policy benefits as damages for both. The guidance we can provide at this point is necessarily limited, however, because the proper submission depends on the disputed facts and issues in each case. There is, for example, no one single proper way to submit a breach-of-contract claim to a jury. *See Haas Drilling Co. v. First Nat'l Bank in Dall.*, 456 S.W.2d 886, 889 (Tex. 1970) (noting that "latitude is permitted in the wording of special issues" on breach-of-contract claims).

A breach-of-contract claim can involve any one or more of numerous discrete issues,[21] but the jury need only be asked and instructed about those the parties actually dispute, and on which the pleadings and evidence actually "raise an issue." *Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002) (citing TEX. R. CIV. P. 278).[22] That is why the Texas Pattern Jury Charges offer a variety of proposed questions and instructions for breach-of-contract claims, including alternative questions and instructions on whether the defendant breached the alleged agreement.[23]

---

[21] A plaintiff asserting a breach-of-contract claim must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *See, e.g.*, *Tamuno Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). To prove the first element (the existence of a valid contract), the plaintiff must establish that (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *See, e.g.*, *E–Learning LLC v. AT & T Corp.*, 517 S.W.3d 849, 858 (Tex. App.—San Antonio 2017, no pet. h.). A particular breach-of-contract claim may involve disputes on any combination of these requirements, as well as on numerous defenses the defendant may assert.

[22] *See, e.g.*, *Herzstein v. Bonner*, 215 S.W.2d 661, 665 (Tex. Civ. App.—Amarillo 1948, writ ref'd n.r.e.) (holding instruction on mutual assent was unnecessary when "there was no controverted issue about whether or not the minds of the parties had met"); *McBurnett v. Smith & McCallin*, 286 S.W. 599, 603 (Tex. Civ. App.—Austin 1926, no writ) (holding question on whether defendant had complied with specifications was unnecessary when defendant admitted he had not complied).

[23] If the parties dispute the existence of an agreement, for example, the PJC Committee suggests the court submit a question asking whether the parties agreed to the specific disputed terms, and include instructions regarding disputed issues like authority, ratification, and offer and acceptance. COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES—BUSINESS, CONSUMER, INSURANCE & EMPLOYMENT, PJC 101.1 & cmt., 101.3, 101.4, 101.5, 101.11 (2016). If the parties do not dispute the existence of an agreement, or if the jury finds the disputed agreement exists, the PJC Committee recommends a broad-form breach-of-contract question asking whether the defendant "failed to comply with the agreement," along with instructions addressing any disputed issues like materiality, implied terms, the meaning of unambiguous terms, or the proper basis for resolving ambiguous terms. *Id.*, PJC 101.2 & cmt., 101.7, 101.8. Yet the PJC Committee recognizes that the submission of this broad-form "breach" question may not be "feasible" in some cases, and the trial court may need to submit more specific questions asking whether the defendant failed to perform specific obligations. *Id.*, PJC 101.2 cmt. And even when the parties dispute both the existence of an agreement and the defendant's compliance with it, the Committee suggests that, in "some cases," one "even broader question that combines the issues of both existence and breach of an agreement may be appropriate," such as a question asking whether the defendant failed "to comply with the agreement, if any." *Id.*

The same is true when the allegedly breached contract is an insurance policy.[24] But the question of whether the insurer complied with its policy obligations does not always depend on whether it paid the proper amount of benefits. An insurer may fail to comply even if it pays the proper amount of benefits if, for example, it paid the benefits late. *See id.*, PJC 101.10. And an insurer may comply even if it fails to pay the proper amount of benefits if, for example, its noncompliance is excused, the insured committed a prior material breach, a condition precedent was unmet, or waiver, estoppel, or duress applies. *See id.*, PJC 101.21, 101.22, 101.24, 101.25, 101.26, 101.60. As the Committee suggests, "[c]are must be taken to ensure that the question is appropriate under the facts of the particular case." *Id.*, PJC 101.2 cmt.

For statutory-violation claims, the Pattern Jury Charge (PJC) Committee recommends a question asking whether the insurer "engage[d] in any unfair or deceptive act or practice that caused damages to" the insured, along with instructions defining "unfair or deceptive practice" as to each alleged but disputed act the Insurance Code prohibits, like misrepresentations, false, deceptive, or misleading statements, and unfair settlement practices. *See id.*, PJC 102.14, 102.16 102.17, 102.18. A second question is also required, predicated on a yes answer to the first, asking the jury to determine the amount of actual damages "caused by such unfair or deceptive act or practice." *Id.*, PJC 115.13. For this question, the Committee recommends that an insured who seeks

---

[24] For breach-of-insurance-policy claims, the PJC Committee recognizes that the parties typically do not dispute the existence of an agreement because the policy is the agreement. *Id.*, PJC 101.1 cmt.; PJC 101.56 cmt. But the question of breach may involve a variety of disputed issues like "whether an event is covered or excluded," "whether a contractual defense or limitation applies," or "the amount of a covered loss." *Id.* The Committee recommends submitting a broad-form compliance question asking whether the insurer "fail[ed] to comply with the agreement," along with an instruction that the insurer failed to comply if it "failed to pay for [all] the damages, if any," that were caused by or resulted from the covered loss or event. *Id.*, PJC 101.57.

to recover policy benefits for a statutory violation should expressly submit "policy benefits" as an element of damages, unless "both the amount and causation of policy benefits as damages are conclusively established." *Id.*, PJC 115.13 cmt. We generally agree with the Committee's recommendations, but our holdings today clarify that, to establish "causation of policy benefits as damages" on a statutory-violation claim, the jury must find that the violation caused the insured to lose benefits she was otherwise entitled to receive under the policy. A proper jury submission must include an appropriate question or instruction to establish that element.

As USAA points out, submitting both a breach-of-contract claim and a statutory-violation claim in the same jury charge can create the risk of conflicting answers. An insured who seeks to recover policy benefits on a breach-of-contract claim must ask the jury to determine the amount of policy benefits lost as a result of the insurer's failure to comply with the insurance policy. *Id.*, PJC 115.3 & cmt. And an insured who seeks to recover policy benefits on a statutory-violation claim must ask the jury to determine the amount of benefits lost as a result of the insurer's act or practice that violates the statute. *Id.*, PJC 115.13 & cmt. For both claims, the jury must find that the insured was entitled to the benefits under the policy. If the jury's answers to questions on one liability theory establish that the insured was not entitled to any policy benefits or was paid all policy benefits to which she was entitled, an answer on the other liability theory that the insured was entitled to benefits would create an irreconcilable and even fatal conflict. *See Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 276 (Tex. 2012).[25]

---

[25] If the court were to resolve only one of the claims first, whether by summary judgment or by jury verdict, a finding that the insured is or is not entitled to receive policy benefits would necessarily resolve that issue for the remaining claim. *See, e.g.*, *Boyd*, 177 S.W.3d at 921–22 (holding that trial court's summary judgment in insurer's

To avoid such a conflict, the court should ensure that the jury answers the entitlement-to-benefits question only once. Here, the trial court may have done best to simply submit Question 2 (to establish that USAA violated the statute) and Question 3 (to establish *both* that the statutory violation caused Menchaca actual damages in the form of policy benefits *and* that USAA breached the contract by failing to pay benefits Menchaca was entitled to under the policy), without submitting Question 1 at all. Alternatively, the court might have first asked the jury whether Menchaca was entitled to receive benefits under the policy, and then conditioned the remaining questions on a "Yes" answer to that first question. Yet another effective alternative may have been to instruct the jury that, because Menchaca seeks only to recover benefits under the policy, USAA did not fail to comply with the policy and Menchaca incurred no damages as a result of any statutory violation unless Menchaca was entitled to benefits under the policy. We offer these proposals—without the benefit of the parties' specific arguments or objections—as examples of how the court might have avoided a potential conflict, but we leave it to the parties and the trial court to determine how best to submit the claims on remand.

## III.
## Menchaca's Claims Against USAA

Having clarified the governing rules, we now apply them to the case before us. As explained above, the jury in this case (1) failed to find in answer to Question 1 that USAA failed to comply with its obligations under the insurance policy; (2) found in answer to Question 2 that

---

favor on breach-of-contract claim negated any award on extra-contractual claims predicated on right to benefits under the policy). The fact that both claims require the same finding does not give the insured a right to two bites at the apple.

USAA violated the Insurance Code by failing to pay Menchaca's claim for policy benefits "without conducting a reasonable investigation with respect to" that claim; and (3) found in answer to Question 3 that USAA's statutory violation resulted in Menchaca incurring damages of $11,350, representing the amount of policy benefits USAA "should have paid" Menchaca.

Ever since the jury returned its verdict, the parties have disputed the effect of its answers. Relying on the jury's answer to Question 1, USAA has contended that Menchaca cannot recover any policy benefits for a statutory violation because she did not prevail on her breach-of-contract claim. Meanwhile, Menchaca has consistently argued that she can recover the award of policy benefits even though she did not prevail on her breach-of-contract claim because the jury found in answer to Questions 2 and 3 that USAA violated the statute and the violation caused Menchaca to incur damages in the form of policy benefits that USAA "should have paid" to Menchaca.

USAA's argument overlooks the fact that—as we have clarified today—an insured need not prevail on a separate breach-of-contract claim to recover policy benefits for a statutory violation. Instead, as we have explained, the insured can prevail under the entitled-to-benefits rule or the benefits-lost rule if she establishes (1) the insurer violated the statute and (2) the violation resulted in her loss of benefits she was entitled to under the policy. Menchaca contends she obtained those findings through Questions 2 and 3. But if USAA "should have paid" policy benefits to Menchaca and did not, then the jury's answers to Questions 2 and 3 conflicted with the jury's answer to Question 1 because USAA necessarily failed to comply with the policy.

The trial court noted this apparent conflict before it dismissed the jury, but both parties took the position that no conflict existed. After the court received the verdict and asked for USAA's

36

response, USAA replied: "We accept the verdict, Your Honor." Menchaca then began explaining why she did not believe the jury's answers conflicted. The trial court asked USAA whether it believed the court should "call the jury back" and have it "reconcile" its answers. USAA replied that calling the jury back "would be totally inappropriate. If it was per se irreconcilable it never should have been submitted to them." The trial court apparently agreed and discharged the jury. At the hearing on USAA's motion for entry of judgment, the trial court raised the conflict issue again, asking whether the jury's answers to Questions 1 and 2 conflicted. It asked Menchaca:

> I mean, failure to be reasonable in the investigation of the incident and the behavior of the adjuster is a breach of contract, and so now you have one that says, no, there is no breach of contract, and the other one says, yeah, there was? Isn't that a conflict between the two?

Menchaca responded, "no, there's not [a conflict] based upon what the jury found in damages." Ultimately, the trial court side-stepped the issue by disregarding the jury's answer to Question 1 and entered judgment for Menchaca based on the jury's answers to Questions 2 and 3.

USAA asserts that the trial court erred by disregarding the jury's answer to Question 1. We unanimously agree. But a majority of the Court concludes that the answer to Question 1 creates an irreconcilable and fatal conflict with the answers to Questions 2 and 3. And a plurality concludes that a judgment based on a fatal conflict does not constitute fundamental error, so parties must preserve the error by objecting to the conflict before the trial court discharges the jury. Because the error was not preserved in this case, we cannot reverse the trial court's judgment on that ground. Nevertheless, in light of the parties' obvious confusion regarding our precedent and the clarifications we provide today, the plurality agrees that we should reverse the judgment and remand for a new trial in the interest of justice.

37

## A. Disregarding Question 1

After both parties argued that the jury's answers did not create a conflict, the trial court decided to disregard Question 1 because it was "poorly worded" and "incomprehensible." Specifically, the court explained that Question 1:

> says, "Breach of contract," but it doesn't say what kind of breach.[26] It doesn't even explain breach of contract. It doesn't even give a definition for breach of contract. There's all kinds of other things that should have been put in there about what's material breach, definition of material breach. The question fails altogether. It shouldn't have been submitted in the first place. If you remember correctly, I didn't want that question submitted. But it was insisted upon by the plaintiffs, so they've got to reap what they sow. But I think that I can easily ignore question number one as being incomprehensible to a layman and that it has no effect. I can go with what I wanted to go with in the first place which was question number two, damage question, then attorney's fees. That's what I'm going to do. I'm going to ignore question number one entirely because I think it was poorly worded.

The court of appeals affirmed the trial court's decision to disregard Question 1 but for different reasons. First, the court concluded it was impossible to know why the jury answered "No" to the question. *See* — S.W.3d at —. In the court of appeals' view, the jury could have answered "No" because it mistakenly believed that USAA could only "fail to comply with the terms of the insurance policy" if it failed to pay the amount that USAA *subjectively* believed it had to pay. *See id.* Second, it concluded that the jury's "No" answer to Question 1 did not "definitively establish that there was no coverage" because USAA agreed that the policy provided coverage for Menchaca's losses and that the amount of the losses did not exceed the policy's deductible. *See id.* Finally, the court concluded that the jury's finding in answer to Question 2 that USAA violated

---

[26] We note that Question 1 did not say "breach of contract" or ask whether there was a "breach of contract," and neither did any other question. Instead, Question 1 asked whether USAA "failed to comply" with the policy.

the statute rendered its answer to Question 1 immaterial because Question 3 "instructed the jury to award the same damages regardless of which theory of liability was adopted." *See id.*

We conclude that the trial court erred by disregarding the jury's answer to Question 1. "A trial court may disregard a jury finding only if it is unsupported by evidence . . . or if the issue is immaterial." *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994) (citing *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966)). Contrary to the court of appeals' analysis, the fact that the court cannot determine the reasons for a jury's answer does not permit the court to disregard that answer. Here, the jury's answer to Question 1 was neither unsupported by the evidence nor immaterial.

First, in light of USAA's evidence that Menchaca's damages were less than the amount of her deductible, at least some evidence supported the jury's failure to find that USAA failed to comply with its obligations under the policy. Although USAA did not dispute that the policy provided "coverage" for the *types* of losses Menchaca suffered, it provided evidence that the *amount* of her loss was less than the policy's deductible, and that evidence supports the jury's failure to find that USAA "failed to comply" with its obligations under the policy.[27]

Second, Question 1 was not immaterial. A jury answer is immaterial when the question "should not have been submitted, or when it was properly submitted but has been rendered immaterial by other findings." *Spencer*, 876 S.W.2d at 157 (citing *C. & R. Transp.*, 406 S.W.2d at

---

[27] We do not agree with the court of appeals' reliance on the fact that USAA conceded that the policy "covered" some of Menchaca's losses. While USAA did in fact concede that point, it also contested Menchaca's claim that her covered losses exceeded the amount of her deductible. By contending that Menchaca's covered losses did not exceed the amount of her deductible, USAA disputed that the policy "covered" the benefits for which she sued because the policy expressly provided that USAA would cover "only that part of the loss over the deductible stated."

39

194). Contrary to the trial court's conclusion, that a question is defective does not render the jury's answer immaterial. *See id.* (concluding that, "while [a question] was defective, it was not immaterial."). Question 1 was material because Menchaca sued USAA for breach of the insurance policy as well as for statutory violations, and she sought to recover on either claim. The jury's answers to Questions 2 and 3 did not render its "No" answer to Question 1 immaterial because Menchaca chose to use Question 1 as the basis for prevailing on her breach-of-contract claim. We therefore conclude that the court of appeals erred by affirming the trial court's decision to disregard the jury's answer to Question 1.

## B. The Effect of Questions 2 and 3

USAA insists that, in light of our agreement that the trial court erred in disregarding the jury's answer Question 1, we must reverse and render judgment in USAA's favor. It argues, correctly, that Menchaca effectively cannot recover policy benefits if USAA did not breach the policy. It also points out, correctly, that Menchaca did not secure that finding in Question 1. But USAA ignores—or at least misconstrues—the effect of the jury's answers to Questions 2 and 3, in which the jury found that USAA's Insurance Code violation caused Menchaca damages of $11,350, representing the difference "between the amount USAA should have paid Gail Menchaca for her Hurricane Ike damages and the amount that was actually paid." This award, USAA agrees, constitutes an award of "policy benefits." The jury's finding that USAA's statutory violation resulted in Menchaca's loss of $11,350 in policy benefits that USAA "should have paid" necessarily constitutes a finding that Menchaca was entitled to receive those benefits under the policy.

USAA argues that we cannot read the jury's answer to Question 3 as a finding that Menchaca was entitled to policy benefits because Question 3 was "merely a damages question." In fact, however, Question 3 was a causation-and-damages question, requiring the jury to determine the amount of Menchaca's loss "that resulted from" *either* USAA's contractual breach *or* its statutory violation.[28] The jury failed to find a contractual breach, but it did find a statutory violation. Thus, the jury's answer to Question 3 can only constitute a finding that USAA's statutory violation caused Menchaca to lose policy benefits that USAA "should have paid." The trial court agreed on this as well. When it disregarded Question 1, it determined that Question 2 and Question 3 together contained all the elements of Menchaca's Insurance-Code-violation claim:[29] (1) USAA violated the insurance code, (2) that violation caused Menchaca to lose policy benefits she otherwise would have been entitled to, and (3) the benefits she "should have" received were $11,350.

This holding does not "suggest[] an exception to the no-recovery rule," as the Dissent proposes. *Post* at ___ (GREEN, J., dissenting). The no-recovery rule requires an insured to establish a right to receive benefits under the policy or an injury independent of a right to benefits.

---

[28] JUSTICE GREEN's suggestion that we "view Question 3 as another liability question" is incorrect. *Post* at ___ (GREEN, J., dissenting). Questions 1 and 2 were the "liability questions" determining what conduct of USAA, if any, gave rise to liability. Question 3 asked the jury to determine the amount of damages that "resulted from" USAA's conduct, thus requiring the jury to determine both causation and damages. And as explained, the question included an instruction requiring the jury to determine the amount based on the amount of policy benefits USAA "should have paid" to Menchaca. This instruction did not transform the question into a "liability question." Instead, it properly ensured that the jury could not conclude that Menchaca's damages "resulted from" USAA's conduct unless it concluded that USAA's conduct caused Menchaca to lose benefits she was entitled to receive under the policy.

[29] At the hearing on the entry of judgment, the trial court said, "But I think that I can easily ignore question number one as being incomprehensible to a layman and that it has no effect. I can go with what I wanted to go with in the first place which was question number two, damage question, then attorney's fees."

41

*Castañeda*, 988 S.W.2d at 198. Here, Menchaca obtained two conflicting findings: one, in Question 1, that she did not have the right to receive policy benefits, and two, in Question 3, that she *did* have the right to policy benefits. If Question 3 did not contain that finding, there no conflict would exist. The Dissent also tacitly acknowledges this by noting that the trial court "eliminated any conflict when it decided to disregard Question 1." *Post* at __ (GREEN, J., dissenting).

Nevertheless, relying primarily on our decisions in *Castañeda* and *Missouri Pacific Railroad Co. v. Whittenburg & Alston*, 424 S.W.2d 427, 430 (Tex. 1968), USAA contends that the answer to the "damages question" (Question 3) cannot conflict with or negate the answer to the "liability question" (Question 1). We do not agree that these cases are controlling here. Citing first to the court of appeals' opinion in *Castañeda*, USAA notes that the portion of the damages question that related to the plaintiff's alleged "loss of benefits" in that case instructed the jury that "'loss of benefits' means the amount of benefits due under the policy," and yet we concluded there that the insured was not entitled to policy benefits. *See Provident Am. Ins. Co. v. Castañeda*, 914 S.W.2d 273, 281 (Tex. App.—El Paso 1996), *rev'd*, 988 S.W.2d 189.

USAA contends that this instruction is indistinguishable from the instruction the trial court gave here. We do not agree that the jury's answer to the "damages question" in *Castañeda* was equivalent to the jury's answer to Question 3 here. Nor do we agree that it could have independently constituted a finding that the insured in *Castañeda* was entitled to policy benefits. Although the *Castañeda* charge defined "loss of benefits" to mean benefits "due under the policy," the charge in that case asked the jury to determine the amount that would compensate the insured for the damages, if any, resulting from *both* the insured's "loss of credit reputation" *and* the "loss

42

of benefits . . . due under the policy." *See Castañeda*, 914 S.W.2d at 281. The jury answered with a single amount of $50,000, making it impossible to determine whether any, some, or all of that amount represented benefits "due under the policy," as opposed to damages resulting from the insured's loss of credit reputation. *Id.* (noting that "the jury's $50,000 total verdict is made up of some unknown combination of past loss of credit reputation and policy benefits"). Here, by contrast, Question 3 instructed the jury to determine only the amount of benefits USAA "should have paid . . . Menchaca for her Hurricane Ike damages." By finding that USAA's statutory violation resulted in damages consisting of policy benefits USAA should have paid, the jury necessarily determined that Menchaca was entitled to receive policy benefits totaling $11,350.

*Whittenburg* is distinguishable for similar reasons. *Whittenburg* involved a shipper's action against a carrier for damages the carrier allegedly caused to the shipper's tomatoes while transporting them by rail from Laredo to Canada. *See* 424 S.W.2d at 428. The first question asked the jury whether the tomatoes "were in worse condition" when they arrived in Canada "than they should have been, considering their quality and condition at Laredo," and the jury answered "No." *Id.* at 428–29. The second question presented the carrier's defensive theory, asking whether "the condition of the tomatoes" when they arrived in Canada "was due entirely" to (a) their condition when delivered in Laredo, (b) the "operation of natural laws upon such tomatoes," or (c) the "inherent tendency, if any there be, of the tomatoes to deteriorate and decay." *Id.* at 429. To that question the jury answered "Yes." *Id.* In answer to the third and fourth questions, the jury found that the tomatoes' actual market value when they arrived in Toronto was $2,092.23, but would

43

have been $3,339.28 if they had been delivered "in the condition in which they should have been delivered." *Id.*

We see the distinction between *Whittenburg* and this case in *Whittenburg*'s second question, in response to which the jury found that the condition of the tomatoes when they arrived in Toronto was "due entirely" to a cause for which the carrier could not be liable. *Id.* Although the jury found the tomatoes were worth less upon arrival than they "should have been," that finding could not support liability, causation, or damages because their condition upon arrival was "due entirely" to other causes. Here, by contrast, the jury's finding in answer to Question 3 of an amount that USAA "should have paid" cannot be attributed to anything other than USAA's obligation under the policy to pay that amount to Menchaca. We therefore conclude that the jury's answer to Question 3 necessarily constitutes a finding that Menchaca was entitled to receive those benefits under the policy.

### C. Fatal Conflict

We next consider whether the jury's answer to Question 1 creates an irreconcilable and fatal conflict with its answers to Questions 2 and 3. "In reviewing the jury findings for conflict, the threshold question is whether the findings are about the same material fact." *Bender v. S. Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex. 1980) (citing *Pearson v. Doherty*, 183 S.W.2d 453, 455 (Tex. 1944)). Here, the jury's answer to Question 3 (USAA "should have paid" $11,350 in policy benefits to Menchaca) necessarily addresses the same material fact as its answer to Question 1 (USAA "fail[ed] to comply with the terms of the insurance policy"), because both requested findings on whether USAA failed to pay benefits Menchaca was entitled to under the policy. The

44

answers conflict because if USAA "should have paid" Menchaca benefits under the policy and did not, then USAA necessarily failed to comply with the policy's terms.

A court "must 'reconcile apparent conflicts in the jury's findings' if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole." *Id.* (quoting *Ford v. Carpenter*, 216 S.W.2d 558, 562 (Tex. 1949)). If the court can reasonably construe the findings in a way that harmonizes them, it must do so "when possible." *Id.* Here, however, the findings are irreconcilable. Menchaca urges us to reconcile them by construing the jury's "No" answer to Question 1 as merely "a failure to find" that USAA failed to comply with the policy, as opposed to an affirmative finding that USAA did not fail to comply with the policy. *See Grenwelge v. Shamrock Reconstructors, Inc.*, 705 S.W.2d 693, 694 (Tex. 1986) (per curiam) (explaining that a failure to find liability is not the same as an affirmative finding of compliance). But we have previously rejected this very argument. *Union Mut. Life Ins. Co. v. Meyer*, 502 S.W.2d 676, 679 (Tex. 1973) ("The inconsistency [giving rise to a conflict] exists in this verdict whether the answer is a failure to find, or a finding, according to the preponderance of the evidence."). Although the jury did not affirmatively find that USAA complied with its policy obligations, its answer to Question 1 confirms its conclusion that Menchaca "failed to carry [her] burden of proof" to establish that USAA failed to comply with the policy's terms. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989).

Conversely, we could attempt to construe the jury's answer to Question 3 as something other than a finding that Menchaca was entitled to policy benefits. We might, for example, speculate that the jury awarded $11,350 as the amount the jury believed USAA "should have paid"

45

Menchaca as a matter of equity or charity, rather than as a policy obligation. But any such effort would require mere speculation and an assumption that the jury ignored the questions and instructions the trial court provided. The trial court asked the jury to determine the amount of damages Menchaca incurred as a result of USAA's contractual breach or statutory violation and instructed the jury to determine that amount based on the difference "between the amount USAA should have paid Gail Menchaca for her Hurricane Ike damages and the amount that was actually paid." As both parties agree, the amount the jury awarded represents the amount of benefits the jury determined USAA "should have paid" to Menchaca under the policy.

When an irreconcilable conflict involves one jury answer that would require a judgment in favor of the plaintiff and another that would require a judgment in favor of the defendant, the conflict is fatal. *Little Rock Furniture Mfg. Co. v. Dunn*, 222 S.W.2d 985, 991 (Tex. 1949).[30] Here, both questions address the decisive issue—whether USAA failed to pay benefits Menchaca was entitled to under the policy. Without Questions 2 and 3, the jury's answer to Question 1 would require a judgment in USAA's favor. But without Question 1, the jury's answers to Questions 2 and 3 would require a judgment in Menchaca's favor. We thus conclude that the answers created a fatal conflict.

---

[30] *See also Arvizu*, 364 S.W.3d at 276 (explaining that jury answers can be "'inconsistent or in conflict, or even in irreconcilable conflict,' and still not be fatal to the entry of judgment") (quoting *Bay Petroleum Corp. v. Crumpler*, 372 S.W.2d 318, 319 (Tex. 1963)). Generally, an irreconcilable conflict is fatal if one party must prevail under one jury answer and the other party must prevail under the conflicting jury answer. *Bay Petroleum*, 372 S.W.3d at 320 (citing *Little Rock Furniture*, 222 S.W.2d at 985).

## D. Fundamental Error

Our determination that the verdict contained a fatal conflict does not end the inquiry. Of course, a trial court should not enter judgment based on a verdict containing a fatal conflict until "the disputed question of fact . . . has been resolved." *Meyer*, 502 S.W.2d at 679. But we must decide whether we can consider a trial court's error in entering such a judgment when neither party has objected to the conflict.

Generally, as "a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion." TEX. R. APP. P. 33.1(a)(1)(A). This rule "conserves judicial resources by giving trial courts an opportunity to correct an error before an appeal proceeds," promotes "fairness among litigants" by prohibiting them from surprising their opponents on appeal, and furthers "the goal of accuracy in judicial decision-making" by allowing the parties to "develop and refine their arguments" and allowing the trial court to "analyze the questions at issue." *In re B.L.D.*, 113 S.W.3d 340, 350 (Tex. 2003).[31] Under, this rule, we will not consider an error that was not properly raised in the trial court "unless a recognized exception exists." *Id.*

An exception to the preservation-of-error requirement applies when the alleged error is "fundamental." "Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). Thus, "we have used the term 'fundamental error' to describe situations in which an

---

[31] *See also Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982) (per curiam) ("The reason for the requirement that a litigant preserve a trial predicate for complaint on appeal is that one should not be permitted to waive, consent to, or neglect to complain about an error at trial and then surprise his opponent on appeal by stating his complaint for the first time.").

appellate court may review error that was neither raised in the trial court nor assigned on appeal." *B.L.D.*, 113 S.W.3d at 310. Beginning in the 1800s, we held that a trial court's entry of a judgment based on inconsistent or insufficient jury answers constitutes fundamental error because the error is "an error of law apparent on the face of the record," *Van Valkenberg v. Ruby*, 3 S.W. 746, 748 (Tex. 1887), courts are not "permitted to speculate" about a jury's intentions, *Moore v. Moore*, 3 S.W. 284, 285–86 (Tex. 1887), and the law deprives courts of "the power to render judgment, which is given by law and not by consent of the parties," *Radford v. Auto. Underwriters of Am.*, 299 S.W. 852, 853 (Tex. Comm'n App. 1927) (internal citations omitted).

In the decades that followed these decisions, the courts of appeals applied the fundamental-error doctrine in numerous cases, concluding that a jury verdict containing a fatal conflict constitutes fundamental error requiring a new trial even if no party complained of or preserved the error.[32] In 1949, we at least appeared to confirm these holdings in *Little Rock Furniture*, noting

---

[32] *See, e.g.*, *Kilgore v. Howe*, 204 S.W.2d 1005, 1007 (Tex. Civ. App.—Amarillo 1947, no writ) ("[C]onflicts in the jury's answers to material issues constitute fundamental error and must be reviewed by the appellate court even if not assigned as error."); *Marshall v. Hall*, 151 S.W.2d 919, 920 (Tex. Civ. App.—Beaumont 1941, writ dism'd) ("Conflicts in the jury's answers constitute fundamental error and must be reviewed by the appellate court even if not assigned as error."); *Steves Distrib. Co. v. Newsom*, 125 S.W.2d 354, 356 (Tex. Civ. App.—San Antonio 1939, no writ) ("Such findings of the jury being in conflict and mutually destructive and there remaining no finding upon which a judgment may rest, it follows that the judgment rendered by the trial court is fundamentally erroneous."); *Haney v. Yarbrough*, 112 S.W.2d 1074, 1077 (Tex. Civ. App.—Amarillo 1938, no writ) ("Conflicting findings of a jury on material issues presents fundamental error."); *Sinclair-Prairie Oil Co. v. Beadle*, 89 S.W.2d 426, 428 (Tex. Civ. App.—Amarillo 1935, writ dism'd) ("[I]t is settled law that a verdict which is contradictory and uncertain, to such an extent that it will not support a judgment, presents fundamental error."); *Interstate Tr. & Banking Co. v. W. Tex. Utils. Co.*, 88 S.W.2d 1110, 1113 (Tex. Civ. App.—Austin 1935, no writ h.) ("The error of rendering judgment upon conflicting findings as to a material fact is more than the ordinary error, in this that it goes to the very right of the court to decide. It cannot therefore be so easily waived as other errors are.") (quoting OCIE SPEER, A TREATISE ON THE LAW OF SPECIAL ISSUES IN TEXAS 564 (1931)); *Gates v. Union Terminal Co.*, 295 S.W. 939, 939 (Tex. Civ. App.—Austin 1927, writ ref'd) ("It is well settled that, where a jury's findings are conflicting on material issues, the error is fundamental and apparent of record."); *Boultinghouse v. Thompson*, 291 S.W. 573, 574 (Tex. Civ. App.—San Antonio 1927, writ dism'd w.o.j.) ("[I]f the jury's findings are conflicting, or are too uncertain in their meaning to sustain the judgment rendered thereon, the errors thereof are regarded as fundamental, and need not be assigned.").

that the "law seems to be established that such a conflict cannot be waived by the parties and that a judgment on a verdict containing such a conflict must be set aside." 222 S.W.2d at 991 (citing *Radford* 299 S.W. 852; *Interstate Tr.*, 88 S.W.2d at 1110; *Kilgore*, 204 S.W.2d at 1005; *Marshall*, 151 S.W.2d at 919). But we had no opportunity to apply the exception in *Little Rock Furniture* because we concluded that the verdict in that case did not "disclose a fatal conflict." *Id.*

Shortly before we decided *Little Rock Furniture*, however, we began to reconsider the fundamental-error doctrine in light of recent statutory revisions and our adoption of the Texas Rules of Civil Procedure. *See Ramsey v. Dunlop*, 205 S.W.2d 979, 982–83 (Tex. 1947). The fundamental-error doctrine "in civil actions arose in Texas under old statutes that stated that cases on appeal could be reviewed 'on an error in law either assigned or apparent on the face of the record.'" *Pirtle*, 629 S.W.2d at 920 (citing 2 GAMMEL'S LAWS OF TEXAS 1562 (1898); 3 GAMMEL'S LAWS OF TEXAS 393 (1898)).[33] But after the Legislature repealed those statutes and we adopted the Rules of Civil Procedure in 1941, no law remained that authorized appellate courts to consider unpreserved or unassigned errors. *Id.* We concluded in *Ramsey*, however, that despite the lack of any express legal authorization, it remained "both the province and the duty" of appellate courts to consider errors that are "truly fundamental," such as "an error which directly and adversely affects the interest of the public generally, as that interest is declared in the statutes or Constitution of this state." *Ramsey*, 205 S.W.2d at 983. We later concluded that fundamental error also exists when "the record affirmatively and conclusively shows that the court rendering the judgment was

---

[33] For an extensive description of the history behind our fundamental-error decisions, *see In re J.F.C.*, 96 S.W.3d 256, 287–95 (Tex. 2002) (Hankinson, J., dissenting).

without jurisdiction of the subject matter." *McCauley v. Consol. Underwriters*, 304 S.W.2d 265, 266 (Tex. 1957). Citing *Ramsey* and *McCauley*, we have since repeatedly explained that the fundamental-error doctrine applies only in those two "rare instances," in which "the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." *In re L.D.C.*, 400 S.W.3d 572, 574 (Tex. 2013) (quoting *In re C.O.S.*, 988 S.W.2d 760, 765 (Tex. 1999)).[34] Although we have not hesitated to apply the doctrine when the error is jurisdictional[35] or adversely affects the public's

---

[34] *See also Mack Trucks*, 206 S.W.3d at 577 ("We have described fundamental error as those instances in which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State, or instances in which the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter."); *B.L.D.*, 113 S.W.3d at 350–51 (same; applying fundamental-error doctrine to errors involving jury instructions in juvenile-delinquency cases); *Operation Rescue-Nat'l v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 975 S.W.2d 546, 569 (Tex. 1998) ("Fundamental error exists 'in those rare instances in which the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas.'") (quoting *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 328 (Tex. 1993) (same)); *Cox v. Johnson*, 638 S.W.2d 867, 868 (Tex. 1982) (per curiam) (same); *Pirtle*, 629 S.W.2d at 920 (same); *Douthit v. McLeroy*, 539 S.W.2d 351, 352 n.2 (Tex. 1976) ("Ordinarily fundamental errors are those errors which directly and adversely affect the public interest or errors in assuming jurisdiction when there is none.").

[35] *See, e.g.*, *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) ("Because we conclude that standing is a component of subject matter jurisdiction, it cannot be waived and may be raised for the first time on appeal."); *N.Y. Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 679 (Tex. 1990) (per curiam) ("The court of appeals' assumption of appellate jurisdiction over an interlocutory order when not expressly authorized to do so by statute is jurisdictional fundamental error which this court will notice and correct even though neither party asserts it."); *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 91 (Tex. 1973) ("[T]he action of the court of civil appeals in rendering judgment by reformation against these defendants, over whom that court had no jurisdiction, was fundamental error for which this court may reverse the court of civil appeals' judgment, even in the absence of a proper assignment."); *Newman v. King*, 433 S.W.2d 420, 422 (Tex. 1968) ("Error in assuming jurisdiction where none exists was held to be fundamental in *McCauley*."); *Petroleum Anchor Equip., Inc. v. Tyra*, 406 S.W.2d 891, 892 (Tex. 1966) (holding that trial court commits fundamental error by proceeding in the absence of an indispensable party because "[j]urisdiction over indispensable parties to a suit is as essential to the court's right and power to proceed to judgment as is jurisdiction of the subject matter"), *overruled in part on other grounds by Cooper v. Tex. Gulf Indus., Inc.*, 513 S.W.2d 200 (Tex. 1974); *Holland v. Taylor*, 270 S.W.2d 219, 220 (Tex. 1954) (holding that permitting a plaintiff who lacks standing to prosecute a suit he had no "authority to institute" was "fundamental error, apparent on the face of the record").

(as opposed to the current parties') interests,[36] we have repeatedly refused to apply the fundamental-error doctrine to other types of errors and have instead consistently restricted appellate review to properly preserved errors.[37] For this reason, we have characterized the fundamental-error doctrine as "a rarity," *Am. Gen. Fire & Cas. Co. v. Weinberg*, 639 S.W.2d 688, 689 (Tex. 1982), and "a discredited doctrine," *B.L.D.*, 113 S.W.3d at 350 (quoting *Cox*, 638 S.W.2d at 868).

Soon after our decisions in *Little Rock Furniture* and *Ramsey*, we warned that cases "discussing fundamental error decided before the adoption of the Rules of Civil Procedure in 1941 must be considered in the light of changes in the concept of fundamental error made by the adoption of the new rules." *Lewis v. Tex. Emp'rs' Ins. Ass'n*, 246 S.W.2d 599, 600 (Tex. 1952). The result of those changes, we later explained, is that the scope of "truly fundamental" error is "much narrower" than it was before the 1941 amendments. *McCauley*, 304 S.W.2d at 266; *see*

---

[36] *See, e.g.*, *C.O.S.*, 988 S.W.2d at 765 (concluding that trial court's failure to give statutory instructions in juvenile-delinquency case was fundamental error, although not harmful error in that case); *State v. Santana*, 444 S.W.2d 614, 615 (Tex. 1969) (holding that jury-charge error in juvenile-delinquency case constituted fundamental error), *vacated on other grounds*, 397 U.S. 596 (1970), *on remand*, 457 S.W.2d 275 (Tex. 1970).

[37] *See, e.g.*, *Mack Trucks*, 206 S.W.3d at 577 (holding trial court's refusal to receive additional evidence and reconsider its ruling was not fundamental error); *In re B.L.D.*, 113 S.W.3d at 350–51 (holding jury-charge error in parental-termination case was not fundamental error); *Operation Rescue-Nat'l*, 975 S.W.2d at 569 ("Awarding punitive damages without an unambiguous finding of actual damages is not fundamental error."); *Newman*, 433 S.W.2d at 422 (holding "failing to appoint a guardian ad litem for a minor plaintiff who is represented by a regular guardian or next friend" is not fundamental error because it "affects the rights of only the particular minor and the particular litigants; it does not adversely affect the interest of the public generally" or "deprive the court of jurisdiction, once obtained, to proceed to judgment in the case"); *W. Tex. Utils. Co. v. Irvin*, 336 S.W.2d 609, 611 (Tex. 1960) (holding error in calculating amount of judgment on which interest is charged is not fundamental error because the "rights asserted are such as belong exclusively to the litigants in this case"); *Hall v. Hall*, 308 S.W.2d 12, 17 (Tex. 1957) (holding error in awarding earned commissions in divorce case "is not one of fundamental error"); *City of Deer Park v. State ex rel. Shell Oil Co.*, 275 S.W.2d 77, 85 (1954) (holding error in determining character and use of disputed acreage was not fundamental error); *Worden v. Worden*, 224 S.W.2d 187, 190–91 (Tex. 1949) (holding failure to grant relief beyond what plaintiff requested was not fundamental error).

51

*also Estate of Pollack v. McMurrey*, 858 S.W.2d 388, 394 (Tex. 1993) (noting that we have since "taken a more restrictive view of fundamental error").

Before we clearly restricted the application of the fundamental-error doctrine to jurisdictional and public-interest errors in *McCauley*, courts of appeals continued to rely on *Little Rock Furniture* to hold that a fatal conflict in jury answers creates a fundamental error that appellate courts may review even if unassigned.[38] But five years after *McCauley*, we rejected the statement in *Little Rock Furniture* and expressly held that, in light of the fundamental-error doctrine's restricted scope, the "entry of judgment by a trial court on conflicting findings does not constitute fundamental error." *St. Paul Fire & Marine Ins. Co. v. Murphree*, 357 S.W.2d 744, 749 (Tex. 1962) (citing *Ramsey*, 205 S.W.2d at 979; *McCauley*, 304 S.W.2d at 265). We have since confirmed and reaffirmed that holding in several cases.[39] With the exception of a few opinions that

---

[38] *See, e.g.*, *Loving v. Meacham*, 278 S.W.2d 466, 472 (Tex. Civ. App.—Amarillo 1955) ("The two jury findings in question being in conflict, they are mutually destructive and constitute a fundamental error."), *rev'd on other grounds*, 285 S.W.2d 936 (Tex. 1956); *Siratt v. Worth Const. Co.*, 263 S.W.2d 842, 848 (Tex. Civ. App.—Fort Worth 1953) ("Where there is material conflict in the answers of the jury there is no basis for a judgment. Such conflict cannot be waived by the parties."), *rev'd on other grounds*, 273 S.W.2d 615 (Tex. 1954); *Sevine v. Heissner*, 262 S.W.2d 218, 222 (Tex. Civ. App.—Austin 1953, writ ref'd n.r.e.) (stating a fatal conflict is a "matter of fundamental error which the parties cannot waive").

[39] *See, e.g.*, *Richter v. Plains Nat'l Bank of Lubbock*, 487 S.W.2d 704, 704 (Tex. 1972) (clarifying that our refusal of the writ of error should not be "understood as approving the holding of the court of civil appeals . . . that rendering judgment upon a jury verdict which contains conflicting answers constitutes fundamental error"); *Newman*, 433 S.W.2d at 422 ("[E]rrors occurring in the trial process have been consistently held not to be fundamental.") (citing *State v. Sunland Supply Co.*, 404 S.W.2d 316, 317 (Tex. 1966); *Kimbrough v. Walling*, 371 S.W.2d 691 (Tex. 1963); *Murphree*, 357 S.W.2d at 744; *Wagner v. Foster*, 341 S.W.2d 887 (Tex. 1960); *Tex. Co. v. State*, 281 S.W.2d 83 (Tex. 1955); *City of Deer Park*, 275 S.W.2d at 77; *Worden*, 224 S.W.2d at 187)); *St. Louis Sw. Ry. Co. v. Duke*, 424 S.W.2d 896, 898 (Tex. 1967) ("[I]t was necessary to file a motion for new trial assigning as error the entry of judgment on conflicting jury findings.") (citing *Murphree*, 357 S.W.2d at 744); *Sunland Supply*, 404 S.W.2d at 319 ("[I]n the *Murphree* case . . . it was held that the entry of a judgment upon conflicting findings did not constitute fundamental error."); *see also In re L.D.C.*, 400 S.W.3d at 574 ("In civil cases, unobjected-to charge error is not reversible unless it is fundamental").

erroneously relied on *Little Rock Furniture* without citing or considering *Murphree*,[40] the courts

of appeals have repeatedly done the same.[41]

---

[40] *See Long Island Owner's Ass'n v. Davidson*, 965 S.W.2d 674, 688 (Tex. App.—Corpus Christi 1998, writ denied) ("Irreconcilable conflict is fatal, fundamental error requiring the judgment to be set aside.") (citing *Little Rock Furniture*, 222 S.W.2d at 991); *Straite v. Krisman*, 737 S.W.2d 80, 83–84 (Tex. App.—Houston [14th Dist.] 1987, no writ) ("When there is a fatal conflict in the jury's answers to special issues, the judgment on a verdict containing such a conflict must be set aside.") (citing *Little Rock Furniture*, 222 S.W.2d at 991; *Olin Corp. v. Cargo Carries, Inc.*, 673 S.W.2d 211, 215 (Tex. App.—Houston [14th Dist.] 1984, no writ)); *McClure v. Casa Claire Apartments, Ltd.*, 560 S.W.2d 457, 461 (Tex. Civ. App.—Beaumont 1977, no writ) ("[A]n irreconcilable conflict . . . cannot be waived by the parties, and 'a judgment entered on a verdict containing such a conflict must be set aside.'") (quoting *Little Rock Furniture*, 222 S.W.2d at 991); *L. & L. Indus. Prods. Co. v. Albert E. Kuehnert, Auctioneers, Inc.*, 404 S.W.2d 324, 330 (Tex. Civ. App. 1966—Eastland, writ ref'd n.r.e.) ("The judgment on the verdict containing such conflicting answers must be set aside.") (citing *Little Rock Furniture*, 222 S.W.2d at 991).

[41] *See, e.g., Oliver v. Ortiz*, No. 03-07-00198-CV, 2008 WL 3166326, at *5 (Tex. App.—Austin Aug. 5, 2008, no writ) (mem. op.) (holding trial court did not err in rendering judgment when "neither party raised a conflict complaint before the jury was discharged"); *Roling v. Alamo Grp. (USA), Inc.*, 840 S.W.2d 107, 109–10 (Tex. App.—Eastland 1992, writ denied) ("Our Supreme Court in [*Murphree*] considered *Little Rock Furniture* and rejected the contention that a 'fatal conflict' was fundamental and could not be waived."); *Kneip v. UnitedBank–Victoria*, 774 S.W.2d 757, 760 (Tex. App.—Corpus Christi 1989, no writ) ("By failing to present a point of error [asserting irreconcilable conflict], the Kneips have waived this assertion . . . [and] the purported conflict does not constitute fundamental error.") (internal citations omitted); *First Tex. Serv. Corp. v. McDonald*, 762 S.W.2d 935, 939 (Tex. App.—Fort Worth 1988, writ denied) (refusing to consider alleged conflict because appellants have not "preserved error on this point"), *overruled on other grounds by Kitchen v. Frusher*, 181 S.W.3d 467 (Tex. App.—Fort Worth 2005, no pet.); *Smith v. Washburn*, 721 S.W.2d 453, 456 (Tex. App.—Tyler 1986, no writ) ("[I]n the absence of an assignment of error regarding conflict in jury answers, we are unable to order that the verdict be set aside."); *Kraatz v. Faubion*, 617 S.W.2d 277, 279 (Tex. Civ. App.—Eastland 1981, no writ) ("There being no fundamental error, the question of conflict has been waived in the instant case."); *Bruflat v. City of Fort Worth*, 411 S.W.2d 387, 389 (Tex. Civ. App.—Eastland 1967, writ ref'd n.r.e.) ("The failure to present and preserve assignments of error with respect to alleged conflicting findings of the jury constitutes a waiver [and not] fundamental error."); *Sutton v. Reagan & Gee*, 405 S.W.2d 828, 833 (Tex. Civ. App.—San Antonio 1966, writ ref'd n.r.e) (refusing to consider alleged conflict because "this point was not raised in [appellants'] motion for new trial"); *Huff v. Ins. Co. of N. Am.*, 394 S.W.2d 849, 853 (Tex. Civ. App.—Fort Worth 1965, writ ref'd n.r.e.) (holding *Murphree* "directly answered" the question and held conflicts do not create fundamental error); *Snead v. H. E. Butt Grocery Co.*, 397 S.W.2d 332, 334 (Tex. Civ. App.—Waco 1965, no writ) (holding because plaintiff did not assign alleged conflict as error, "any possible conflict is waived") (citing *Murphree*, 357 S.W.2d at 744); *Sands Motel v. Hargrave*, 358 S.W.2d 670, 674 (Tex. Civ. App.—Texarkana 1962, writ ref'd n.r.e.) ("Regardless of doubt which may have heretofore existed regarding conflicts in the jury's verdict on special issues as constituting fundamental error of which this court must take notice, the question is now settled. . . . In the recent case of [*Murphree*], the Supreme Court refused to treat a conflict in the jury's verdict on special issues as fundamental error, and held that failure to assign the conflict as error in a motion for new trial waived any complaint and precluded a consideration of it on appeal.").

We did not hold otherwise in our 1973 opinion in *Meyer*, 502 S.W.2d at 679. The trial court in *Meyer* entered judgment for the defendant based on the jury's verdict, but the court of appeals reversed and remanded the case "for further proceedings," concluding, "There being a fatal and irreconcilable conflict in the jury's answers, the verdict cannot stand, and the judgment based thereon must be set aside." *Meyer v. Union Mut. Life Ins. Co.*, 483 S.W.2d 7, 10 (Tex. Civ. App.—Dallas 1972), *aff'd*, 502 S.W.2d 676 (Tex. 1973). We agreed that the verdict contained a fatal conflict and affirmed, stating that such a verdict "cannot be regarded as an acceptable resolution of the disputed question of fact, and judgment should not be rendered until that fact issue has been resolved." *Meyer*, 502 S.W.2d at 679. Neither the court of appeals in *Meyer* nor this Court, however, addressed the question of whether error based on conflicting jury answers is fundamental or must be preserved, nor did they cite *Little Rock Furniture*, *Ramsey*, *McCauley*, *Murphree*, or any other authorities on that issue. In fact, neither the court of appeals nor this Court cited *any* authority for reversing the trial court's judgment in *Meyer*.

Until today, this Court has never cited, relied on, or discussed *Meyer* as authority on any issue. Only three courts of appeals have ever cited it, and none cited it as authority on the issue of whether error based on conflicting jury answers is fundamental or must be preserved.[42] That is not to suggest that the Court wrongly decided *Meyer*; rather, it appears to simply confirm that the issue

---

[42] *Sun Oil Co. v. Massey*, 594 S.W.2d 125, 132 (Tex. Civ. App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (citing *Meyer* for the proposition that a conflict in jury findings is not fatal "unless the findings, considered separately and taken as true, would compel the rendition of different judgments"); *Jon-T Farms, Inc. v. Goodpasture, Inc.*, 554 S.W.2d 743, 750 (Tex. Civ. App.—Amarillo 1977, writ ref'd n.r.e.) (citing *Meyer* for the proposition that "broad submission of issues in non-negligence cases has always been permitted"); *Lord v. Ins. Co. of N. Am.*, 513 S.W.2d 96, 100 (Tex. Civ. App.—Dallas 1974, writ ref'd n.r.e.) (citing *Meyer* for the proposition that "the burden of producing evidence to demonstrate that the insured's losses were not attributable to the pleaded excluded hazards of the policy rested upon the insured").

was not *at issue* in *Meyer*. Neither our opinion nor the court of appeals' opinion in *Meyer* ever mentioned or addressed whether any party objected to the conflicting answers or whether they should have. As best we can tell, the plaintiff in *Meyer* never complained that the defendant did not preserve the error, and the Court simply never addressed that issue. We cannot agree that *Meyer*—which never addressed the preservation requirement—somehow overruled or trumps *Murphree*, *Duke*, *Sunland Supply*, and the dozens of other opinions that directly addressed the issue. Consistent with these numerous applicable precedents, we conclude that the fatal conflict in the jury's verdict in this case does not constitute fundamental error, and as a result, we cannot consider that conflict unless the error was properly preserved. *Mack Trucks*, 206 S.W.3d at 577.

### E. Preservation of Error

We next consider how and when a party must properly preserve error based on a fatal conflict in a jury verdict. rule 295, entitled "Correction of Verdict," provides that if a jury's answers "are in conflict," the trial court must give the jury written instructions regarding the nature of the conflict "and retire the jury for further deliberations." TEX. R. CIV. P. 295. In light of this rule, some early court of appeals decisions held that, to preserve error based on conflicting jury answers, the party must object to the conflict before the trial court discharges the jury. *See, e.g.*, *Haddox v. Futrell*, 321 S.W.2d 110, 112 (Tex. Civ. App.—Waco 1959, no writ) ("[P]laintiff, by not raising objection to the alleged conflict at the time the jury returned its verdict, has waived the matter."); *City Transp. Co. v. Vatsures*, 278 S.W.2d 373, 377 (Tex. Civ. App.—Waco 1955, writ dism'd) ("Appellant waived any conflict by accepting the jury's verdict as it was and in not directing the Trial Court's attention to the alleged conflict at a time when it could have been corrected.").

55

In *Murphree*, however, while holding that the jury answers in that case did not conflict, we noted that the petitioner admitted that "it did not assign *in its motion for new trial* any error as to conflict," and that there "was no assignment of error contained *in the motion for new trial* sufficient to bring this question to the trial court's attention." *Murphree*, 357 S.W.2d at 748 (emphasis added). Based on these statements, some courts held that a party asserting a conflict on appeal must have preserved the argument by objecting to the conflict in its motion for new trial. *See, e.g.*, *Sands Motel*, 358 S.W.2d at 674 (stating that *Murphree* "held that failure to assign the conflict as error in a motion for new trial waived any complaint and precluded a consideration of it on appeal"); *Sutton*, 405 S.W.2d at 833 (refusing to consider appellants' conflict argument "since this point was not raised in their motion for new trial"). A few years later, in *Duke*, we cited *Murphree* in support of our holding that "it was necessary to file a motion for new trial assigning as error the entry of judgment on conflicting jury findings." 424 S.W.2d at 898.

Following these decisions, the Fort Worth Court of Appeals held that an appellant can preserve a conflict objection by filing a motion for new trial and need not object before the court discharges the jury. *McDonald*, 762 S.W.2d at 939–40. The *McDonald* court expressed dissatisfaction with its own holding, however, opining that "*Murphree* neither explicitly nor implicitly stated such a rule" and was "simply misconstrued," and that the "previous rule" requiring an objection before the jury is discharged was "better law." *Id.* at 940. Nevertheless, the court concluded that its holding was required because it was "clearly made the law in *Duke.*" *Id.* The Fort Worth court later overruled *McDonald*, however, *see Kitchen*, 181 S.W.3d at 473, and since then, the courts of appeals have consistently held that "a party waives any complaint

56

regarding any alleged conflict in the jury's answers by failing to voice this complaint before the

jury is discharged." *Meek v. Onstad*, 430 S.W.3d 601, 605–06 (Tex. App.—Houston [14th Dist.]

2014, no pet.).[43]

---

[43] *See Triyar Cos., LLC v. Fireman's Fund Ins. Co.*, 515 S.W.3d 517, 530 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) (holding that by failing to assert conflict before court discharged the jury appellant "waived the complaint and cannot now successfully claim that they are entitled to a new trial based on an irreconcilable conflict in the jury's answers"); *Rhey v. Redic*, 408 S.W.3d 440, 465 (Tex. App.—El Paso 2013, no pet.) ("[A] Rule 295 objection must be made before the jury is discharged."); *Swallow v. QI, LLC*, No. 14-10-00859-CV, 2012 WL 952246, at *6 (Tex. App.—Houston [14th Dist.] Mar. 20, 2012, pet. denied) (mem. op.) ("[A] party who does not object to a purported conflict between jury findings before the jury is discharged has failed to preserve error on this issue."); *Robinson & Harrison Poultry Co. v. Galvan*, 323 S.W.3d 236, 244 n.11 (Tex. App.—Corpus Christi 2010, pet. granted, judgm't vacated by agmt.) (noting appellant who complained of conflicting answers "did not raise that contention in the trial court before the jury was discharged and has, therefore, not preserved the argument for our review"); *Bejjani v. TRC Servs., Inc.*, No. 14-08-00750-CV, 2009 WL 3856924, at *5 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (mem. op.) ("Appellants did not object to the asserted conflict in the jury's answers under Texas Rule of Civil Procedure 295 before the jury was discharged. Accordingly, appellants failed to preserve error on this issue."); *Lundy v. Masson*, 260 S.W.3d 482, 495 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) ("To preserve error, an objection to an incomplete or unresponsive verdict, or conflicting jury findings, must be made before the jury is discharged."); *Roberson v. Collins*, 221 S.W.3d 239, 242 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("Roberson, however, failed to preserve error on this issue when he failed to object to the purported conflict before the jury was discharged."); *Springs Window Fashions*, 184 S.W.3d at 867 (holding a "conflict objection can be waived" and appellant "did not first preserve a conflict objection at trial"); *Dori v. Bondex Int'l, Inc.*, No. 11-04-00179-CV, 2006 WL 1554614, at *4 (Tex. App.—Eastland, June 8, 2006, no pet.) (mem. op.) ("[T]he trial court must be made aware of the conflict before the jury is discharged, or error is waived."); *City of San Antonio v. Esparza*, No. 04-04-00631-CV, 2005 WL 3477826, at *2 (Tex. App.—San Antonio, Dec. 21, 2005, no pet.) (mem. op.) ("[B]ecause the City did not object to the jury's answers before the jury was discharged, we hold that the City waived any error on appeal."); *Kitchen*, 181 S.W.3d at 473 ("[A] complaint of conflicting jury findings was not 'preserved for our review because Appellants did not raise any contention concerning conflicting jury findings before the jury was discharged.'") (quoting *In re Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 861 (Tex. App.—Fort Worth 2003, pet. denied) (overruling *McDonald*, 762 S.W.2d at 939–40)); *Bush*, 122 S.W.3d at 861 ("This complaint is not preserved for our review because Appellants did not raise any contention concerning conflicting jury findings before the jury was discharged."); *Norwest Mortg., Inc. v. Salinas*, 999 S.W.2d 846, 865 (Tex. App.—Corpus Christi 1999, pet. denied) ("In order to preserve error, the appellant must object to the conflict or inconsistency before the jury is discharged."); *City of Port Isabel v. Shiba*, 976 S.W.2d 856, 860 (Tex. App.—Corpus Christi 1998, pet. denied) ("To preserve error when jury answers fatally conflict, appellant must object to the conflict before the jury is discharged."); *Torres v. Caterpillar, Inc.*, 928 S.W.2d 233, 244 (Tex. App.—San Antonio 1996, writ denied) ("[N]o complaint regarding a conflict in the jury answers may be raised on appeal unless an objection is raised before the jury is discharged."); *Robinson v. Robinson*, No. 14-94-006060-CV, 1996 WL 41911, at *3 (Tex. App.—Houston [14th Dist.] 1996, writ dism'd) (not designated for publication) ("To preserve error, appellant must object to the conflict before the jury is discharged."); *Ciba-Geigy Corp. v. Stephens*, 871 S.W.2d 317, 324 (Tex. App.—Eastland 1994, writ denied) ("Ciba–Geigy failed to object to the jury's answers before the jury was discharged; consequently, this complaint was waived."); *Durkay v. Madco Oil Co.*, 862 S.W.2d 14, 23 (Tex. App.—Corpus Christi 1993, writ denied) ("In order to preserve error, the appellant must object to the conflict or inconsistency before the jury is discharged."); *Roling*, 840 S.W.2d at 109–10 (holding an objection to conflicting jury findings "must be made before the jury is discharged in order to preserve error").

We agree with the courts of appeals. Although we noted in *Murphree* that the petitioner had not raised the jury conflict in a motion for new trial, we did not consider or address whether the petitioner also had to object to the conflict under rule 295 before the court discharged the jury. *Murphree*, 357 S.W.2d at 748; *see also Esparaza*, 2005 WL 3477826, at *2 (noting that *Murphree* did not consider "whether assigning error in a motion for new trial would be sufficient to preserve error"). Nor did we address that issue in *Duke*, 424 S.W.2d at 897–98. In that case, the plaintiff did in fact object before the trial court discharged the jury and "moved that the court retire the jury for further deliberations because of alleged conflicts." *Id.* at 897. After the trial court denied that motion, the plaintiff filed a motion for mistrial based on the conflicting jury answers, but the court denied that motion as well and entered judgment for the defendant. *Id.* The plaintiff then appealed, asserting the conflicts as the sole error, and the defendant moved to dismiss the appeal, arguing that the plaintiff failed to preserve the error by filing a motion for new trial. *Id.* The court of appeals disagreed, reversed the judgment because of the conflict, and remanded the case for a new trial. *Id.* We reversed the court of appeals' judgment, holding that rule 324, *as it then existed*, required a motion for new trial as "a jurisdictional prerequisite to appeal from a case tried to a jury, with certain specific exceptions" that did not apply. *Id.* (applying earlier version of TEX. R. CIV. P. 324). We held that because conflicting jury answers do not constitute fundamental error, rule 324 required that, if "there was an irreconcilable conflict in the jury answers, it was necessary to file a motion for new trial assigning as error the entry of judgment on conflicting jury findings." *Id.* at 898 (citing *Murphree*, 357 S.W.2d at 744).

58

As the courts of appeals have since explained, the issue of whether a new-trial motion is required is no longer relevant because the current, revised version of rule 324 "does not require that a party file a motion for new trial to complain on appeal that there is an alleged conflict in the jury's answers." *Meek*, 430 S.W.3d at 606–07; *see also Roling*, 840 S.W.2d at 109–10. But more importantly, while we held in *Duke* that a new-trial motion was *necessary* to preserve error, we did not address whether it was independently *sufficient*. *See Meek*, 430 S.W.3d at 607 n.2 (explaining that *Duke* does not support the proposition that "raising this complaint for the first time in a motion for new trial is sufficient" to preserve error). We did not address that issue in *Duke* because the petitioner had in fact objected to the conflicting answers before the trial court discharged the jury. 424 S.W.2d at 897; *see also Torres*, 928 S.W.2d at 245 (noting that, in *Duke*, "counsel for the plaintiffs did move that the jury retire for further deliberations based on an alleged conflict in the verdict"); *Roling*, 840 S.W.2d at 109 (noting that "the plaintiff in *Duke* had requested the trial court to retire the jury for further deliberations"). In short, as most all of the courts of appeals have recognized, we did not hold in *Murphree* or *Duke* that a party is not required to raise conflicting jury answers before the trial court discharges the jury to preserve error on that point, and the Fort Worth court "in *McDonald* misconstrued *Duke*" as holding otherwise. *Roling*, 840 S.W.2d at 110.

We agree with the courts of appeals that to preserve error based on fatally conflicting jury answers, parties must raise that objection before the trial court discharges the jury. As we have explained, our "procedural rules are technical, but not trivial." *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014). They require timely error preservation because affording trial courts an

59

opportunity to consider and rule on alleged error "conserves judicial resources and promotes fairness by ensuring that a party does not neglect a complaint at trial and raise it for the first time on appeal." *Id.* When the alleged error is an incomplete, nonresponsive, or conflicting jury verdict, rule 295 requires the trial court to correct that error by providing additional instructions and retiring the jury "for further deliberations." TEX. R. CIV. P. 295. Once the court has discharged the jury, it cannot reform the conflicting answers as rule 295 requires. *See Roling*, 840 S.W.2d at 109 ("Once the jury is discharged, a conflict in the jury's answers cannot be reformed."). As the Austin Court of Appeals has explained, "What the jury intended by findings that potentially conflict is best determined by the jury itself," and that is the solution rule 295 requires. *Springs Window Fashions*, 184 S.W.3d at 867.

The Dissent claims that rule 295 allows for other preservation mechanisms because the rule states that a trial court "*may* direct [the verdict] to be reformed." *Post* at __ (GREEN, J., dissenting) (quoting TEX. R. CIV. P. 295). The rule does not mandate reformation because reformation is not always needed. The trial court's first resort is to reconcile the jury's findings. *Bender*, 600 S.W.2d at 260 (stating that the trial court "must" reconcile findings "when possible"). Should reconciliation fail, only then need the court recall the jury. We do not ignore the "may" in rule 295; we have applied the manners of recourse in the appropriate order.

As mentioned, rule 295 provides the procedure for resolving incomplete and nonresponsive jury verdicts as well as those containing conflicting answers. TEX. R. CIV. P. 295. Addressing incomplete verdicts, we have long held that a judgment will not be reversed "unless the party who would benefit from answers to the issues objects to the incomplete verdict before the jury is

60

discharged, making it clear that he desires that the jury redeliberate on the issues or that the trial court grant a mistrial." *Fleet v. Fleet*, 711 S.W.2d 1, 3 (Tex. 1986); *see also Continental Cas. Co. v. Street*, 379 S.W.2d 648, 650 (Tex. 1964) (holding party failed to preserve error because he "did not object to the acceptance of the jury verdict as incomplete, and thus by timely objection afford the trial court the opportunity, before the jury was discharged, of correcting the error (if such it was) of accepting the verdict with the issues unanswered"). We conclude that the same error-preservation requirement applies when a party complains of a judgment based on conflicting jury answers.

### F. Effect of Failure to Preserve

Having concluded that the entry of a judgment based on fatally conflicting jury answers does not constitute fundamental error and that the error must be preserved by an objection asserted before the court discharges the jury, we must now address who bore the burden of preservation and the proper disposition of this case in light of the fact that neither USAA nor Menchaca timely objected. Amicus for USAA[44] argues that the fatal conflict "should preclude any recovery" by Menchaca. Although USAA does not agree that the jury's answers fatally conflict, it argues that if they do conflict, it was Menchaca's burden to object and she waived the error by failing to do so before the trial court dismissed the jury. We disagree. In the jury's answers to Questions 2 and 3, Menchaca obtained all of the findings necessary to recover on her statutory-violation claim, and USAA is the party who must rely on the conflicting answer to Question 1 to prevent Menchaca

---

[44] The Chamber of Commerce of the United States of America.

from recovering based on the answers to Questions 2 and 3. As the party who must rely on the conflicting answer to avoid the effect of answers that establish liability, USAA bore the burden to object. *See, e.g.*, *Burbage*, 447 S.W.3d at 256 ("The *complaining party* must object before the trial court and 'must point out distinctly the objectionable matter and the grounds of the objection.'") (emphasis added) (quoting TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1); *cf. Fleet*, 711 S.W.2d at 3 ("The trial court will not be reversed for rendering judgment, however, unless the party who would benefit from answers to the issues objects to the incomplete verdict before the jury is discharged.").

When we held in our early decisions that fatally conflicting jury answers constitute fundamental error, we reasoned that the error is fundamental in part because appellate courts lack the power to render a judgment based on conflicting answers. *See Radford*, 299 S.W. at 853 (stating that the law deprives the courts of "the power to render judgment . . . which is given by law and not by consent of the parties") (internal citations omitted). We explained that when it is "impossible to determine from these irreconcilable statements, with any degree of certainty, what the jury really meant by these findings, . . . no judgment can be rendered upon it." *Van Valkenberg*, 3 S.W. at 748. Because fatally conflicting answers result in "no sufficient verdict to support the judgment of the court below, or any other judgment which might be rendered," we concluded that the judgment "must be set aside, and the case remanded for a new trial." *Moore*, 3 S.W. at 286.

Under our modern, rules-based, restricted fundamental-error doctrine, however, we have discarded these concerns in favor of the efficiency and fairness our error-preservation requirement provides. Now, as before, courts "must 'reconcile apparent conflicts in the jury's findings' if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other

findings considered as a whole." *Bender*, 600 S.W.2d at 260 (quoting *Ford*, 216 S.W.2d at 562). And if a trial court concludes it cannot reconcile the conflict, it must provide additional instructions and retire the jury for further deliberations. TEX. R. CIV. P. 295. But if the court does not identify a conflict and no party raises it before the court discharges the jury, the conflict provides no basis for reversal on appeal, even if it is "fatal." The failure to preserve the error does not merely prevent the parties from raising the conflict on appeal, it prevents the appellate courts from considering the conflict or treating it as a basis for reversing the trial court's judgment. *Columbia Med. Ctr.*, 290 S.W.3d at 211 ("Appellate judges have much less discretion [than trial courts] because they are limited to the issues urged and record presented by the parties."); *Mack Trucks*, 206 S.W.3d at 577 ("Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties."); *C.O.S.*, 988 S.W.2d at 765 ("Generally, our civil rules of procedure and our decisions thereunder require a party to apprise a trial court of its error before that error can become the basis for reversal of a judgment.").

Here, USAA raised numerous objections, both to the proposed charge before its submission and to the jury's answers after the jury returned its verdict. But USAA failed to properly preserve any error based on conflicting jury answers before the trial court discharged the jury. As a result, the trial court discharged the jury without giving it the opportunity to resolve its conflicting answers. The trial court then attempted to resolve the conflict by disregarding the jury's failure to find a breach of contract. USAA properly preserved its argument that the court erred in disregarding that answer, and we have agreed with USAA that the trial court erred. We have disagreed, however, with USAA's argument that Menchaca's failure to prevail on her contract

63

claim automatically negates the findings she obtained on her statutory claim. We are thus left with a judgment based on fatally conflicting jury answers, but since neither party preserved that error, we cannot consider the conflict as a basis for reversing the trial court's judgment.

### G. Remand in the Interest of Justice

Having concluded that the trial court and court of appeals erred in disregarding the jury's answer to Question 1, we are left with findings that support the judgment in Menchaca's favor based on statutory violations but that also contain a fatal conflict. We could render judgment for Menchaca based on the jury's verdict because USAA failed to preserve that conflict. In the interest of justice, however, we could also "remand the case to the trial court even if a rendition of judgment is otherwise appropriate." TEX. R. APP. P. 60.3. Such a remand is particularly appropriate when it appears that one or more parties "proceeded under the wrong legal theory," *Boyles v. Kerr*, 855 S.W.2d 593, 603 (Tex. 1993), especially when "the applicable law has . . . evolved between the time of trial and the disposition of the appeal." *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 162 (Tex. 2012); *see Hamrick v. Ward*, 446 S.W.3d 377, 385 (Tex. 2014) (remanding in the interest of justice "in light of our clarification of the law"); *Moriel*, 879 S.W.2d at 26 (same, in light of our "substantial clarification"). In light of the parties' obvious and understandable confusion over our relevant precedent and the effect of that confusion on their arguments in this case, as well as our clarification of the requirements to preserve error based on conflicting jury answers, we conclude that a remand is necessary here in the interest of justice.

USAA has steadfastly maintained that Menchaca cannot recover policy benefits for a statutory violation unless she also obtains a finding that USAA "breached" the insurance policy or that USAA's statutory violation caused an injury independent of her right to benefits. At trial,

USAA objected to the charge's failure to condition Question 2 on a "Yes" finding to Question 1 and objected to the submission of Question 3 on the ground that "Texas courts have held that extra[-]contractual damages need to be independent from policy damages." After the jury returned its verdict, USAA argued that it should prevail because "the jury found 'NO' breach of contract" and awarded only policy benefits. After the trial court entered its judgment, USAA argued in its motion for new trial that Menchaca cannot recover in the absence of a finding of breach because she did not seek damages "separate and apart from those sought under the breach of contract theory." Although we have clarified today that a plaintiff does not have to prevail on a separate breach-of-contract claim to recover policy benefits for a statutory violation, the confusing nature of our precedent precludes us from faulting USAA for the position it has maintained throughout this litigation. Moreover, although USAA failed to preserve any objection based on the jury's conflicting answers, Menchaca agreed with USAA that the answers did not conflict, and neither the parties nor the trial court had the benefit of the guidance we have provided today regarding the preservation of such error. Under these circumstances, we conclude that justice requires that we reverse and remand the case to the trial court for a new trial.

**IV.**
**Conclusion**

For the reasons explained, we reverse the court of appeals' judgment and remand the case to the trial court for a new trial in the interest of justice.

_____
Jeffrey S. Boyd
Justice

65

Opinion delivered:  April 13, 2018